1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nancy E. Wolff, Esq., No. 133334
nwolff@cdas.com
COWAN, DeBAETS, ABRAHAMS,
& SHEPPARD LLP
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394
NWolff@cdas.com

*Attorneys for Plaintiff*
TEAMLAB INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TEAMLAB INC., a Japanese
corporation,

                Plaintiff,

vs.

MUSEUM OF DREAM SPACE,
LLC, a California limited liability
company, and DAHOOO
AMERICAN CORPORATION, an
Illinois corporation,

                Defendants.

Case No.: 2:19-cv-06906-VAP-GJS

**FIRST AMENDED COMPLAINT
FOR:**

    **(1) Copyright Infringement –
17 U.S.C. § 501 et seq.**

Plaintiff teamLab Inc. ("teamLab"), by its undersigned attorneys Cowan, DeBaets, Abrahams & Sheppard LLP, hereby submits its First Amended Complaint against defendants Museum of Dream Space, LLC ("MODS") and Dahooo American Corporation ("Dahooo"; collectively with MODS, "Defendants"), as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement based on Defendants' blatant copying of teamLab's original copyrighted expressive works of digital interactive art, direct copying of images depicting teamLab's expressive works, and creation of unauthorized derivative works in the form of photographs of physical exhibits.

2.     Upon information and belief, Defendants were aware of and had access to teamLab's original works, which were created well before Defendants' infringing works.

3.     Defendants copied copyright-protectable elements of teamLab's original works in creating at least two of their exhibits for their Los Angeles-based art exhibition held at the Museum of Dream Space (the "MODS Museum").

4.     The two physical works created by Defendants that are at issue are substantially similar to two of teamLab's original works.

5.     Upon information and belief, Defendants, as the purveyors of similar digital interactive art exhibitions, and/or their personnel, principals, or affiliates, knew or reasonably should have known that teamLab – an experienced, well-known, and internationally renowned art collective – would have owned the copyrights in its original works.

6.     Defendants also made verbatim copies of still images owned by teamLab of teamLab's works, constituting infringement of the images by unlawful reproduction, as well as unlawful public display by posting those images on Defendants' website and social media accounts to promote the MODS Museum.

7.      Upon information and belief, Defendants also took pictures of teamLab's physical exhibits and posted them online, thereby creating and publicly displaying unauthorized derivative works of the teamLab exhibits.

## THE PARTIES

8.      teamLab is an interdisciplinary art collective headquartered in Tokyo, Japan and incorporated under the laws of Japan.  It employs numerous artists, designers, computer scientists, and engineers to create large-scale digital works of art in the form of interactive experiential displays.

9.      The mission of the collective is to explore the relationship between humanity and nature by creating immersive digital art exhibitions that provide viewers with a unique aesthetic and sensory experience.

10.     MODS is a California limited liability company formed in 2018 that, upon information and belief, operates the MODS Museum.  The MODS Museum space in Los Angeles opened in or about May 2019; the MODS Museum claims it is the first museum mainly exhibiting digital art in the United States.

11.     Dahooo is an Illinois corporation.  Upon information and belief, Dahooo owns MODS and/or the MODS Museum.

## JURISDICTION AND VENUE

12.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

13.     Subject matter jurisdiction is also proper in this Court under 28 U.S.C. § 1332(a) because there is complete diversity between teamLab, a citizen of Japan, and Defendants (MODS, a citizen of California, and Dahooo, a citizen of Illinois) and the amount in controversy exceeds $75,000 exclusive of interest and costs.

14.     This Court has personal jurisdiction over MODS because MODS is a California LLC organized and existing under the laws of California, is licensed to do

3

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

business in California, and is headquartered in Los Angeles, California.   Further, a substantial portion of the conduct at issue occurred in this judicial district.

15.     The Court has personal jurisdiction over Dahooo because, on information and belief, MODS is an alter-ego of Dahooo in that Dahooo owns and controls MODS and/or the MODS Museum such that MODS and/or the MODS Museum are Dahooo's mere instrumentalities; it shares managers and/or directors with Dahooo; it is not separate from Dahooo in any meaningful way; and to allow Dahooo to avoid jurisdiction in California would promote injustice.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to teamLab's claims occurred in this judicial district.

17.     teamLab has standing and the capacity to sue for copyright infringement because, as a Japanese company, it is entitled to enforce its copyrights in the United States pursuant to 17 U.S.C. § 104(b)(1)-(2) and the Berne Convention for the Protection of Literary and Artistic Works (to which the United States is a party through the Berne Convention Implementation Act of 1988).

18.     Even though its copyright registrations in its exhibits are pending, teamLab is entitled to sue in federal court because its works are not "United States Works" as defined by the Copyright Act.   *See id.* §§ 101; 411(a).

19.     As such, teamLab maintains exclusive rights under the Copyright Act, 17 U.S.C. § 106, including the right to reproduce its original works and to distribute and publicly display the same and copies thereof, and to create derivative works.

## INTRADISTRICT ASSIGNMENT

20.     This action should be assigned to the Los Angeles Division, because this action arises in Los Angeles County.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

# FACTS

teamLab Background

21.    Established in 2001, teamLab owns the copyrights in and to dozens of mixed-media interactive audiovisual and sculptural works that have appeared in public exhibitions (in both permanent collections and limited exhibitions) around the world for many years.   teamLab also owns the copyrights in and to still images depicting its works.

22.    Article 15 of the Japanese Copyright Law (Act No. 38 of May 6, 1970) states: "For a work (except a work of computer programming) that the employee of a corporation or other employer . . ., makes in the course of duty at the initiative of the corporation, etc., and which the corporation, etc. makes public as a work of its own authorship, the author is the corporation, etc., so long as it is not stipulated otherwise in a contract, in employment rules, or elsewhere at the time the work is made." Under Japanese law, teamLab is the author and owner of all of its works, including the works at issue here.   teamLab is therefore the legal owner of all copyright rights therein because the works are collaborative pieces of art designed, programmed, and created by artists employed by teamLab, Inc., the collective's corporate entity.

23.    teamLab has been creating interactive works of art for more than 15 years, and has put on exhibitions around the globe, including in London, Sydney, Singapore, Istanbul, and Pace's Art + Technology Gallery in Menlo Park, California; in 2018, it opened a 107,000-square-foot interactive museum in Tokyo, *teamLab Borderless*.

24.    The exhibits – which often cost millions of dollars to create – have earned teamLab prestigious recognitions including the Thea Award for Outstanding Achievement for themed entertainment, an impressive accolade similarly awarded to both Tokyo DisneySea and Universal Studios Japan.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

25.     teamLab has worked with prominent global clients such as Paris' La Villette, Marina Bay Sands Pte. Ltd., National Museum of Singapore, and Pace Gallery. teamLab's collaboration with Paris' La Villette gained significant global attention as the centerpiece of the Japan-France 150th anniversary joint project celebrating the establishment of diplomatic relations between the two countries.

26.     teamLab's works and art exhibitions have also appeared in popular culture – for example in a music video of rapper and producer DJ Swizz Beatz – and have been licensed for advertisements and profiled by mainstream American media outlets such as CNN and Vice.

teamLab's Original Works and MODS' Infringing Works

*The teamLab Exhibits*

27.     The first teamLab exhibit Defendants have infringed is a composite exhibition of two interrelated and intertwined works exhibited together in the same space titled "Universe of Water Particles, Transcending Boundaries" (created and published in Japan in 2013) and "Flowers and People, Cannot be Controlled but Live Together" (created in Japan and published in London in 2015) (collectively, "Boundaries"); the second is titled "Crystal Universe" ("Crystal"; together with "Boundaries," the "Original Works").

28.     "Boundaries" is an original work of sculptural visual art that was created (as a merger of the two works mentioned above) by teamLab in Japan by Japanese artists in 2017 and was first displayed at Pace Gallery in London from January 25 through March 11, 2017.  "Boundaries" appeared in part as follows:

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20



21
22
23
24
25
26
27
28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

1
2
3
4
5
6
7
8
9



10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27



28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

29.   "Boundaries" (a video of which is available at https://www.youtube.com/watch?v=bqDeXfWKb-k), consists of the following artistic elements: water expressed as a continuum of innumerable light-blue particles; a waterfall expressed by flowing water which is a collection of streaks of particles; water flowing uninterruptedly from a waterfall onto the floor; multicolored flowers drawn behind the waterfall on the walls and floors; when a person stands on the actual work, that person becomes an obstacle for the streams of water as if a rock is blocking the water flow, and the work gives off the effect of changing water flow as a result of the person standing in the water; and the work is also designed so that certain elements produce the effects of blooming flowers whenever a person stands in the flowing body of water and hinders the water flow.  The effect is that a part of the work of art is ever transforming as a result of the presence of viewers.  It was created by utilizing the technique by which the 3D space is recognized like flat space as used in ancient Japanese paintings.

30.   "Boundaries" was created by a team of artists, graphic designers, and computer programmers who created image boards and key visuals, modeled the visuals through 3D data modeling, and ultimately rendered the visuals in the form of perceptible digital animation in a 3D space.  These digital elements are saved and stored in computer memory. teamLab technicians and artists also selected and installed special projectors and sensors as part of the overall work in the exhibition space to create an immersive sculptural experience and used blended images using multiple projectors and integrated and aligned sensors to supply images and music.

31.   In this sense, "Boundaries" is a visual work of art created in a fixed 3D space which is a combination of physical elements and digital elements, and is fixed as one work by both elements being fixed in a tangible medium of expression (including

9

in the room housing the exhibition, in electronic media, and via the projectors and sensors noted above), for more than a transitory duration.

32.     The digital images of "Boundaries" (like the water flow on the ground and the blooming flowers, providing the sensation of motion and passage of time) vary in accordance with the underlying computer algorithm that is designed and programmed by teamLab's artists and programmers.  This variety is not dependent on a viewer's acts, and the large-scale elements of "Boundaries" such as the location of the major elements like the waterfall, are constant.  Since only some of the digital images in "Boundaries" vary due to viewers' acts in accordance with the algorithm, such viewers' acts do not have influence on the vast majority of other parts of "Boundaries," and as described above, this work exists without viewers' acts.  Interactivity is one feature of "Boundaries" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of "Boundaries."

33.     "Boundaries" is subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of its first publication, one or more of its authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and because "Boundaries" was first published in a foreign nation that, as of that date, was a treaty party, namely the United Kingdom.

34.     Defendants' substantially similar exhibit which, upon information and belief, is titled "Season Dream," appears in part as follows:

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16
17
18



19
20
21
22
23
24
25
26
27



28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



26
27
28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

35.    An illustrative side-by-side comparison of the similarities between "Boundaries" and "Season Dream," appears below, with "Boundaries" in the left column and "Season Dream" in the right.






13










teamLab Inc.'s First Amended Complaint against
Museum of Dream Space, LLC, *et ano.*

36.     teamLab's work "Crystal" is an original work of sculptural art created by teamLab in Japan in 2015 and was first displayed at Pola Museum Annex in Japan in 2015.  It appeared in part as follows:



TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



37.   This interactive installation consists of lights forming a sculpture (a video of "Crystal" is available at https://www.youtube.com/watch?v=NoDK3dZ8q4M).  This exhibit also uses mirrors and reflective floor and ceiling surfaces to express an illusion of infinite lights.  Viewers can walk through the space, feeling as if they are surrounded by lights, and their positioning and interaction, among other things through a smartphone app, influences how the lights forming the sculptural aspects of the work appear.

38.   "Crystal" was created by a team of artists, graphic designers, computer programmers, and technicians who created image boards and key visuals, modeled the visuals through 3D data modeling (the digital elements being saved and stored in computer memory), and ultimately rendered the work by installation of LED lights in the space, in the form of a highly creative and painstakingly arranged physical light display.  teamLab technicians selected and installed special hardware including LED lights and sensors.  teamLab technicians also developed an application for smartphones to interact with "Crystal."

39.   In this sense, "Crystal" is a visual work of art created in a fixed 3D space combining physical and digital elements and is fixed as one work by both elements in a tangible medium of expression (including in physical lights, electronic media, and via the sensors noted above) for more than a transitory duration.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

40.     In "Crystal," the sculptural work of LED lights which constitutes the work does not vary and the sculptural work of LED lights is controlled by an underlying computer algorithm designed and programmed by teamLab's artists and programmers that is not dependent on viewers' acts.  Viewers can walk through the installation and use a smartphone app to create further changes, and the change is part of the sculptural work created by lighting of the LED lights.  Also, the sculptural work of LED lights itself remains fixed and most of the other parts of the work do not change.  Interactivity is one feature of "Crystal" and viewers' acts simply add an extra dimension to the work. in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of "Crystal."

41.     "Crystal" is best described per the teamLab website as "an accumulation of light points to create a sculptural body, similar to the way distinct dots of color form an image in a pointillist painting."

42.     "Crystal" is subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of its first publication, one or more of its authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and because "Crystal" was first published in a foreign nation that, as of that date, was a treaty party, namely Japan.

43.     Defendants' substantially similar work which, upon information and belief is titled "Galaxy Dream" (together with "Season Dream," the "Infringing Works") appears in part as follows:

17

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22



23
24
25
26
27
28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*



44.   An illustrative side-by-side comparison of the similarities between "Crystal" and "Galaxy Dream," appears below, with "Crystal" in the left column and "Galaxy Dream" in the right.

 

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

1
2
3
4
5
6
7
8




9
10
11
12
13
14
15
16
17
18
19




20
21
22
23
24
25
26
27
28

45.     Defendants admitted in publicly available comments in their own social media posts that they had access to teamLab's works, acknowledging that MODS exhibits look similar to teamLab works (highlighting added):

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



46.     As further proof of access, Defendants also copied verbatim text from teamLab's website that teamLab used to describe its works of art.  For instance, the following appeared on the MODS Museum website:



TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

The very same text can be found on the teamLab website, which was established in 2003, well before the MODS Museum website was created:

> Digital technology enables complex detail and freedom for change. Before people started accepting digital technology, information and artistic expression had to be presented in some physical form. Creative expression has existed through static media for most of human history, often using physical objects such as canvas and paint. The advent of digital technology allows human expression to become free from these physical constraints, enabling it to exist independently and evolve freely.

47.   Furthermore, as mentioned below, the Defendants copied still images of teamLab's exhibits in order to advertise the MODS Museum in their online postings and attempted to pass off teamLab's works as their own at the MODS Museum exhibition.  Such acts by the Defendants make it even more evident that the Defendants had access to teamLab's works and that the Defendants consciously copied teamLab's works.

*The teamLab Still Images*

48.   Various still images owned by teamLab depict teamLab's exhibits (hereinafter, collectively, the "teamLab Images").  The teamLab Images were created by teamLab in Japan by Japanese artists employed by teamLab by photographing live teamLab exhibits.  The teamLab Images appear on teamLab's website.

49.   The teamLab Images, as still-image works of visual art, are fixed and original with teamLab.

50.   The timing of creation for the teamLab Images is set forth in the following table.  The teamLab Images are considered "unpublished" under 17 U.S.C. § 104(a) because no copies were ever distributed to the public by sale, transfer of ownership, or by rental, lease, or lending or offered to a third party for further distribution.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

| teamLab Image | Timing of Creation |
|---|---|
|  | July 2016 |
|  | July 2016 |
|  | June 2018 |
| | |

23



June 2018



June 2018



June 2018

|  | February 2015 |
|  | June 2018 |
|  | September 2016 |

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

|  | June 2018 |
|  | June 2018 |
|  | June 2018 |

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

51. The teamLab Images are subject to protection under the Copyright Act, 17 U.S.C. § 104(a), because as unpublished works, their national origin is irrelevant. Nonetheless, they were authored by nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and posted on teamLab's website.

52. Defendants, in their online postings to market the MODS Museum, copied the teamLab Images verbatim and attempted to pass off teamLab's works as their own in order to draw attention and ticket sales to the nascent MODS Museum and its planned grand opening. These direct duplications are listed in the table below; the teamLab Images appear in the left column and the Defendants' infringing uses (collectively, the "Infringing Images") appear in the right column.

 

 

27



TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*







TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*



30

 

53.   Third-party websites even took notice of MODS' copying of well-known teamLab works, for instance, at https://wacowla.com/blog/2019/01/23/museum-of-dream-space-open-spring-2019/:



Although there is not much information at present, from the pictures of the official website, you can see the "forest of Resonating Lamps", "Universe of Water Particles on a Rock where People Gather" and "Crystal Universe", which are famous for the Japanese teamLab team. works. What kind of experience the Museum of Dream Space will bring to visitors, waiting to be revealed at the opening of the museum on April 1st!

31

*Defendants' Photographs of other teamLab Exhibits*

54.    Upon information and belief, Defendants, or someone on behalf of Defendants, photographed various other teamLab exhibits and posted the images of the exhibits online to promote the MODS Museum.   The photographs of the exhibits constitute unauthorized derivative works of the exhibits (the "Infringing Derivatives").

55.    The teamLab exhibits at issue include works titled "Forest of Resonating Lamps," "Universe of Water Particles on a Rock Where People Gather," and "Wander through the Crystal World."   They are collectively referred to as the "Photographed Exhibits."

56.    The Photographed Exhibits are original works of art whose authorship originated with teamLab.

57.    "Forest of Resonating Lamps" is a 3D sculptural exhibition consisting of Murano glass lamps suspended from the ceiling of a mirrored room (a video of the work appears at https://www.youtube.com/watch?v=7mK_uOqiQik).   The lamps are arranged in a staggered configuration that forms a static sculptural grid through which viewers can walk.   The lamps change lighting and colors in accordance with a computer algorithm designed and programmed by teamLab's artists and programmers, with these digital elements being saved and stored in computer memory.   Also, the proximity of viewers changes a part of the lamps' lighting and colors subsisting in the work in accordance with the algorithm, but the Murano glass lamps themselves and the arrangement of the lamps and the lighting and colors of most of them are not affected by viewers' acts.    Interactivity is one feature of "Forest of Resonating Lamps" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of this work.

58.   "Forest of Resonating Lamps" is a sculptural work of visual art created in a fixed 3D space which combines physical and digital elements and is fixed in a tangible medium of expression (including electronic media and physical items such as Murano glass lamps) for more than a transitory duration.

59.   "Universe of Water Particles on a Rock Where People Gather" (seen here https://www.youtube.com/watch?v=iUSXVxOb4Hk) is similar in appearance and nature to "Boundaries" and the process of its creation largely mirrors that of "Boundaries," as described above.   It is an experiential 3D sculptural work housed in a three-dimensional space simulating water falling onto a rock where the flow of the water draws the shape of the waterfall.  In this sense, it is a visual work of art created in a fixed 3D space combining physical and digital elements and is fixed as one work by both elements being fixed in a tangible medium of expression (including the space housing the exhibit and geographic features therein, electronic media on which the digital elements are saved and stored, and projectors, and sensors) for more than a transitory duration.

60.   As with "Boundaries," the digital images of this work (like the water flowing on the ground and the blooming flowers) vary in accordance with an underlying computer algorithm that is designed and programmed by teamLab's artists and programmers. This variety is not dependent on viewers' acts.  Only a part of digital images of this work vary due to viewers' acts in accordance with the algorithm, and the vast majority of this work of art exists without viewers' acts, and large-scale elements of the work, such as the location of the waterfall and rock, are constant. Viewers' acts simply add extra elements to the work.  Since only some of the digital images in "Universe of Water Particles" vary due to viewers' acts in accordance with the algorithm, such viewers' acts do not have influence on the vast majority of other parts of the work and as described above, this work exists without viewers' acts. Interactivity

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1   is one feature of "Universe of Water Particle" and simply adds an extra dimension to

2   the work; in light of the protectability of works such as video games, this limited

3   interactivity does not impact the copyrightability of "Universe of Water Particles."

4      61.   "Wander       through       the       Crystal       World"       (seen       here

5   https://www.youtube.com/watch?v=htGsCscBRIk)  is similar in appearance and nature

6   to "Crystal," and the process of its creation largely mirrors that of "Crystal," as

7   described above.  This work is a combination of physical elements and digital elements

8   and is created in a fixed 3D space, and the work is fixed as one work by both elements

9   being fixed in a tangible medium of expression (including the LED light fixtures and

10  electronic media on which the digital elements are saved and stored) for more than a

11  transitory duration.

12     62.   "Wander through the Crystal World" is similar to "Crystal" in that the

13  fixed sculptural work of LED lights itself which embodies this work does not vary and

14  the appearance of the lights is primarily controlled by the underlying computer

15  algorithm designed and programmed by teamLab's artists and programmers and is not

16  dependent on viewer's acts.  Viewers can walk through the installation and use a

17  smartphone app to create certain changes, and the changes are part of the sculptural

18  work that is created by lighting of the LED lights, but the sculptural work of LED lights

19  itself remains fixed. In this sense, viewers' acts simply add extra elements to the work.

20  Interactivity is one feature of "Wander through the Crystal World" and simply adds an

21  extra dimension to the work; in light of the protectability of works such as video games,

22  this limited interactivity does not impact the copyrightability of this work.

23     63.   "Wander through the Crystal World" is also best described per the

24  teamLab website as "an accumulation of light points to create a sculptural body, similar

25  to the way distinct dots of color form an image in a pointillist painting."

26

27

28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

| Name of Exhibits | Timing of Creation | Publication Date | Publication Place |
|---|---|---|---|
| "Forest of Resonating Lamps" | September 2016 | September 2, 2016 | France |
| "Universe of Water Particles on a Rock Where People Gather" | June 2018 | June 21, 2018 | Japan |
| "Wander through the Crystal World" | June 2018 | June 21, 2018 | Japan |

64.   The Photographed Exhibits were created in Japan.  The timing of their creation, and their dates and locations of first publication (via public exhibitions) appear in the table below.

65.   The Photographed Exhibits are subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of their first publication, one or more of their authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and because they were first published in a foreign nation that, as of that date, was a treaty party, namely Japan or France.

66.   Defendants' Infringing Derivatives are listed below, with images of the Photographed Exhibits appearing in the left column and the Infringing Derivatives appearing in the right column.

35



TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*



37

Discovery of the Infringements

67.      In early 2019, teamLab discovered that Defendants – who had not yet opened the MODS Museum – were promoting and advertising the upcoming grand opening of the MODS Museum on the internet via a website (www.modsla.com) and social media accounts (including Facebook and Instagram) using images of teamLab's works.  These images consisted of the Infringing Images and Infringing Derivatives.

68.      In February 2019, teamLab demanded the removal of certain images and videos, including Infringing Images and Infringing Derivatives, from the MODS website and social media accounts, and the removal of infringing content from MODS' upcoming exhibition, that bore substantial similarities to teamLab's works and images and videos of works.

69.      In March and April 2019, teamLab continued to find infringing images and videos on the MODS website, on YouTube, and on social media platforms.  Many of those works remain live and online.

70.      In May 2019 MODS proceeded to publicly display the Infringing Works starting at the MODS Museum grand opening.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

71.     By continuing to use the Infringing Images and Infringing Derivatives, and by publicly displaying the Infringing Works, Defendants have consciously flouted their legal obligation to refrain from infringing teamLab's copyrights in the Original Works, the teamLab Images, and the Photographed Exhibits.

**CLAIMS FOR RELIEF**

**COUNT I**

**COPYRIGHT INFRINGEMENT – ORIGINAL WORKS**

**(17  U.S.C. § 501)**

72.     teamLab incorporates the allegations of Paragraphs 1 through 71 of its Complaint as if restated herein.

73.     teamLab's Original Works, including "Boundaries" and "Crystal" are original works fixed in tangible mediums of expression in the form of pictorial, graphic, or sculptural works, and/or audiovisual works.  teamLab's Original Works, including "Boundaries" and "Crystal" are therefore protected under § 102(a)(5)-(6) of the Copyright Act.

74.     Each of the ultimate artworks "Boundaries" and "Crystal" is a combination of physical elements and digital elements created in a fixed 3D space by human authors, and is fixed as one work by both elements being fixed in tangible mediums of expression (including electronic and physical media) for more than transitory duration. "Boundaries" and "Crystal" are perceptible by one's senses for more than a transitory duration because physical elements are unchangeable; aspects of the digital elements (saved and stored in computer memory), *i.e.*, sights, sounds, and experiences, vary in accordance with a computer algorithm upon which these works are built; because the overall design and placement of the major artistic elements and structures in the Original Works as a whole is constant; and because the Original Works are perpetual in that they continually show their artistic content with or without viewers present..

39

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

75.    Further, the fixation of the audiovisual aspects of the Original Works' fixation is made simultaneously with their transmission, and as works that incorporate elements of improvisation, viewer participation during the Original Works' performance does not undermine their fixation.   Interactivity is one feature of "Boundaries" and "Crystal" and simply adds an extra dimension to the works; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of the Original Works.

76.    teamLab owns the copyrights in the Original Works as works for hire by its employees.

77.    Defendants had access to teamLab's works, including the Original Works, and were aware of the existence of the same prior to creating their Infringing Works. Defendants admitted as much in social media posts as well as through copying the teamLab Images to advertise the MODS Museum, copying text verbatim from teamLab's website, and attempting to pass off photos taken at teamLab exhibitions as MODS works.

78.    Defendants have copied protected expression from teamLab's work "Boundaries" into "Seasons Dream," including without limitation the multicolored flowers drawn behind the waterfall on the walls and floor of the exhibit, and the streams of water cascading down the wall and onto the ground.  Both works also contain artwork flanking either side of the waterfall; while those individual pieces may be different, they both give off the appearance of outer space, stars, or organic plant life.

79.    To the extent any individual element is not itself protectable, the unique selection, arrangement, and coordination of elements (both copyrightable, such as specific graphical artwork rendered during the exhibit, and uncopyrightable, such as any purely ephemeral elements and stylistic and technological techniques and choices that make the Original Works unique) in "Boundaries" is protectable and Defendants'

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

work "Seasons Dream" replicates the original and protectable selection, arrangement, and coordination of teamLab's work. "Season Dream" is substantially similar in total concept and feel to "Boundaries."

80.   Defendants have copied protected expression from teamLab's work "Crystal" into "Galaxy Dream," including without limitation, the orientation of the lights in the room, the similar use of colors, the use of blinking patterns, and the use of mirrors and reflective floor and ceiling surfaces to create an illusion of infinite lights.

81.   To the extent any individual element is not itself protectable, the unique selection, arrangement, and coordination of elements (both copyrightable, such as the arrangement of LED lights and specific graphical artwork rendered during the exhibit, and uncopyrightable, such as any purely ephemeral  elements and stylistic and technological techniques and choices that make the Original Works unique) in "Crystal" is protectable and Defendants' work "Galaxy Dream" replicates the protectable original selection, arrangement, and coordination of teamLab's work. "Galaxy Dream" is substantially similar in total concept and feel to "Crystal."

82.   Defendants did not procure a license or any other form of permission to copy any protectable elements of teamLab's Original Works, and as such any copying was unauthorized.

83.   Defendants' work "Season Dream" is substantially similar to teamLab's "Boundaries."

84.   Defendants' work "Galaxy Dream" is substantially similar to teamLab's "Crystal."

85.   Defendants have infringed teamLab's exclusive rights under 17 U.S.C. §§ 106(1) & (5) by reproducing and publicly displaying protected elements of the Original Works.

86.   teamLab has been extensively damaged by Defendants' infringement of the Original Works.

87.   teamLab routinely receives license fees in the range of one million to several million dollars for six-month licensing periods in connection with exhibitions of its works.  These fees can be fixed or contingent based on revenue generated by a given exhibition, or a combination of both.

88.   teamLab exhibitions attract significant visitors and generate millions of dollars in revenues.  For instance, from the time it opened on June 21, 2018, teamLab's Tokyo museum *teamLab Borderless*, welcomed about 2,300,000 visitors, many of whom stated, in response to a survey, that they traveled to Tokyo specifically to visit teamLab's museum.  *teamLab Borderless* garnered more than $50,000,000 in total earnings within a year of its opening.

89.   License fees in connection with the use of teamLab's works in commercial advertising projects generate hundreds of thousands of dollars' worth of fees.

90.   Upon information and belief, Defendants continue to reap significant financial benefits, including ticket sales and other profits, by displaying the Infringing Works as part of the MODS Museum exhibition.

91.   Upon information and belief, Defendants reaped profits far in excess of $75,000 on the back of teamLab's copyrighted works.

92.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants have no intention of ceasing their infringements and plan to imminently create and open additional exhibitions, including in Las Vegas, Nevada.

93.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

## COUNT II

## COPYRIGHT INFRINGEMENT – TEAMLAB IMAGES

### (17  U.S.C. § 501)

94.     teamLab incorporates the allegations of Paragraphs 1 through 93 of its Complaint as if restated herein.

95.     The teamLab Images are original works fixed in tangible mediums of expression in the form of pictorial or graphic works and are therefore protected under 17 U.S.C. § 102(5).

96.     teamLab owns the copyrights in the teamLab Images as works for hire by its employees.

97.     Defendants had access to the teamLab Images and were aware of the existence of the same prior to creating their Infringing Images given that the Infringing Images are exact replicas of the teamLab Images.

98.     Defendants copied the teamLab Images, if not verbatim than substantially in their entireties, including most if not all original expressive elements thereof, and posted the unauthorized copies on Defendants' websites and social media accounts in order to advertise the MODS Museum.

99.     Defendants' conduct violates teamLab's rights under 17 U.S.C. §§ 106(1) & (5).

100.   Defendants did not procure a license or any other form of permission to copy the teamLab Images, and as such any copying was unauthorized.

101.   Defendants' Infringing Images replicate the total concept and feel of the teamLab Images

102.   Defendants' Infringing Images are substantially similar to the teamLab Images, and are in fact, identical or nearly identical.

103.   teamLab has been extensively damaged by Defendants' use of the Infringing Images.   teamLab routinely receives fees in the range of approximately $94,000 to $280,000 for granting licenses to third parties to use teamLab's original works in images and/or videos for purposes of advertising third-party products or services.

104.   Upon information and belief, Defendants received significant financial benefits, including profits, by using unauthorized copies of the teamLab Images to advertise the grand opening of the MODS Museum and continued using the Infringing Images to sell tickets even after the MODS Museum opened.

105.   Upon information and belief, Defendants reaped profits far in excess of $75,000 on the back of teamLab's copyrighted works.

106.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants have no intention of ceasing their infringements.

107.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

## COUNT III

## COPYRIGHT INFRINGEMENT – PHOTOGRAPHED EXHIBITS

### (17 U.S.C. § 501)

108.   teamLab incorporates the allegations of Paragraphs 1 through 107 of its Complaint as if restated herein.

109.   The Photographed Exhibits are original works fixed in tangible mediums of expression in the form of pictorial, graphic, or sculptural works, and/or audiovisual works.   teamLab's Photographed Exhibits are therefore protected under § 102(a)(5)-(6) of the Copyright Act.

110.   Each of the artworks embodied in the Photographed Exhibits consists of a combination of physical elements and digital elements created by human authors, and both elements are fixed in a tangible medium of expression (including in physical spaces, on computer memory, and through projectors and sensors, glass lamps. and LED lights) for more than a transitory duration.  The Photographed Exhibits are fixed and perceptible by one's senses for more than a transitory duration because physical elements are unchangeable; digital elements are saved and stored in computer memory where many aspects of the sights, sounds, and experiences vary in accordance with the works' respective computer algorithms; because the overall design and placement of the major artistic elements and structures in the Photographed Exhibits as a whole is constant; and because the Photographed Exhibits are perpetual in that they continually show their artistic content with or without viewers present..

111.   Further, as discussed above, the audiovisual aspects of the Photographed Exhibits are fixed simultaneous with being transmitted, and as works that incorporate elements of improvisation, viewer participation during the Photographed Exhibits' performance does not undermine their fixation.   Interactivity is one feature of the Photographed Exhibits and simply adds an extra dimension to the works; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of the Photographed Exhibits.

112.   teamLab owns the copyrights in the Photographed Exhibits as works for hire by its employees.

113.   Upon information and belief, Defendants, or someone on Defendants' behalf, photographed the Photographed Exhibits and posted the images on Defendants' websites and social media accounts in order to advertise the MODS Museum.

114.   Defendants had access to teamLab's works, including the Photographed Exhibits, and were aware of the existence of the same prior to creating their Infringing

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

Derivatives.  Defendants admitted as much in social media posts as well as through copying text verbatim from teamLab's website and attempting to pass off the Infringing Images for teamLab Images.

115.  Defendants have copied protected expression from teamLab's Photographed Exhibits, including without limitation by capturing fixed visual images on which individual discrete expressive design elements of each of the Photographed Exhibits, such as flowing streams of water, multicolored flowers, and fixed sculptural aspects of meticulously arranged suspended lamps and hanging LED lights.

116.  To the extent any individual element is not protectable, the original selection, arrangement, and coordination of elements (both copyrightable, such as specific physical structures and graphical artwork rendered during the exhibit, and uncopyrightable, such as any purely ephemeral elements and stylistic and technological techniques and choices that make the Original Works unique) in the Photographed Exhibits is protectable and Defendants' Infringing Derivatives replicate the protectable original selection, arrangement, and coordination of teamLab's works.

117.  The Infringing Derivatives replicate the total concept and feel of the Photographed Exhibits.

118.  Defendants' Infringing Derivatives are substantially similar to teamLab's Photographed Exhibits.

119.  Defendants did not procure a license or any other form of permission to copy any protectable elements of teamLab's Photographed Exhibits, and as such any copying or creation of derivative works was unauthorized.

120.  Defendants' conduct violates teamLab's rights under 17 U.S.C. §§ 106(2) because photographs of pictorial, graphic, or sculptural works constitute derivative works which must be authorized by the copyright owner, here, teamLab.

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

121.   teamLab has been extensively damaged by Defendants' infringement of the Photographed Exhibits largely for the reasons set forth in Counts I and II, in that teamLab derives substantial licensing revenue from exhibitions of its original works and licensing of images of same for advertising purposes.

122.   Upon information and belief, Defendants received significant financial benefits, including profits, by using its Infringing Derivatives to advertise the grand opening of the MODS Museum and continued using the same to sell tickets even after the MODS Museum opened.

123.   Upon information and belief, Defendants reaped profits far in excess of $75,000 on the back of teamLab's copyrighted works.

124.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants have no intention of ceasing their infringements.

125.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

### **PRAYER FOR RELIEF**

WHEREFORE, teamLab respectfully requests that it be awarded judgment as follows:

1.   Finding Defendants infringed teamLab's copyrights in and to the Original Works by violating teamLab's right to reproduce, distribute, and/or publicly display the Original Works by means of creating, distributing, and publicly displaying the substantially similar Infringing Works;

2.   Finding Defendants infringed teamLab's copyrights in and to the teamLab Images by reproducing, displaying, and distributing exact duplicates of the teamLab Images in the form of the Infringing Images;

3.   Finding Defendants infringed teamLab's copyrights in and to the

47

Photographed Exhibits by creating the Infringing Derivatives of the Photographed Exhibits by taking pictures of the Photographed Exhibits and reproducing, publishing, and publicly displaying said pictures on Defendants' websites and social media accounts;

4.    Awarding monetary damages pursuant to 17 U.S.C. § 504(b) including (a) teamLab's lost revenues, including without limitation, from lost license fees, royalties, or other revenues or profits that could have been derived from authorized use of the Original Works, the teamLab Images, and creation of derivative works of the Photographed Exhibits; and (b) all of Defendants' profits earned from use of the Infringing Works, the Infringing Images, and the Infringing Derivatives, including without limitation, from income derived from ticket sales, merchandise sales, and online advertising revenue;

5.    Issuing a preliminary and permanent injunction ordering Defendants to:

a.    immediately dismantle and permanently take down the Infringing Works located at the MODS Museum and to refrain, from now and into the future, from reinstating or creating any exhibition, display, or other use of the Infringing Works and any works that are substantially similar to the Original Works or Infringing Works;

b.    immediately delete, take down, or otherwise remove all images and videos from all websites and social media accounts owned, controlled, or operated, directly or indirectly, by Defendants that depict the Original Works and/or the Infringing Works, the teamLab Images and/or Infringing Images, the Photographed Exhibits and/or Infringing Derivatives, and any works, including images and videos, that are substantially similar to any or all of the above;

c.    permanently cease and desist from any further copying, distribution, public display, creation of derivative works, or engaging in any other use of the Original Works and/or the Infringing Works, the teamLab Images and/or Infringing Images, the

1  Photographed Exhibits and/or Infringing Derivatives, and any works, including images
2  and videos, that are substantially similar to any or all of the above;

3        d.  permanently cease and desist from any further infringement of
4  teamLab's copyrights including the creation of any works substantially similar to any
5  works in which teamLab owns copyright rights;

6        e. issue a public statement on Defendants' website(s) and any social media
7  accounts and platforms owned, controlled, or operated, directly or indirectly, by
8  Defendants stating that the Infringing Works, Infringing Images, and Infringing
9  Derivatives violated teamLab's copyrights and disclaiming any affiliation with
10 teamLab; and

11     6.  Awarding teamLab such other and further relief as the Court deems just
12 and proper.

13 Dated:     October 28, 2019

14                                 **COWAN DeBAETS ABRAHAMS**
15                                 **& SHEPPARD, LLP**

16                           By:  /s/Nancy E. Wolff

17                     Nancy E. Wolff, Esq., No. 133334

18                       Scott J. Sholder, Esq., *pro hac vice*
19                     *Attorneys for Plaintiff,*
20                     TEAMLAB INC.

21

22

23

24

25

26

27

28

TEAMLAB INC.'S FIRST AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*