1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nancy E. Wolff, Esq., No. 133334
nwolff@cdas.com
COWAN, DeBAETS, ABRAHAMS,
& SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394
NWolff@cdas.com

*Attorneys for Plaintiff*
TEAMLAB INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMLAB INC., a Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MUSEUM OF DREAM SPACE, LLC, a California limited liability company, and DAHOOO AMERICAN CORPORATION, an Illinois corporation,<br><br>Defendants. | Case No.: 2:19-cv-06906-VAP-GJS<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) Copyright Infringement**<br><br>**(2) Contributory Copyright Infringement**<br><br>**(3) Vicarious Copyright Infringement** |

Plaintiff teamLab Inc. ("teamLab"), by its undersigned attorneys Cowan, DeBaets, Abrahams & Sheppard LLP, hereby submits its Second Amended Complaint against defendants Museum of Dream Space, LLC ("MODS") and Dahooo American Corporation ("Dahooo"; collectively with MODS, "Defendants"), as follows:

## NATURE OF THE ACTION

1.       This is an action for direct, vicarious, and contributory copyright infringement based on Defendants' copying of teamLab's original copyrighted works, Defendants' supervising (and direct financial interest in) the unauthorized exploitation of teamLab's copyrighted works by others, and Defendants' facilitating, inducing, causing, and/or materially contributing to the infringing conduct of others.

2.       Upon information and belief, Defendants, directly and/or through their agents or contractors, were aware of and had access to teamLab's original works, which were created well before Defendants' and others' infringing works.

3.       Defendants and/or their agents or contractors copied copyright-protectable elements of teamLab's original works in creating at least two of Defendants' exhibits for their Los Angeles-based art exhibition held at the Museum of Dream Space (the "MODS Museum"), and, upon information and belief, Defendants have recently opened new exhibitions in Las Vegas and Hollywood featuring one or more of these infringing exhibits or exhibits similar thereto.

4.       Elements of two physical works created by Defendants that are at issue are substantially similar to copyrightable elements of two of teamLab's original works.

5.       Upon information and belief, Defendants also allowed a music video for musician Justin Bieber's song "Intentions (CHANGES: The Movement) ft. Quavo" featuring two of the infringing exhibits, to be filmed on the MODS premises.

6.       The video, until recently appeared on YouTube (https://youtu.be/TYVvtWLk8xw) and had received over fifteen million views.

2

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

7.     Upon information and belief, Defendants, as the purveyors of similar digital interactive art exhibitions, and/or their personnel, principals, or affiliates, knew or reasonably should have known that teamLab – an experienced, well-known, and internationally renowned art collective – would have owned the copyrights in its original works.

8.     Upon information and belief, in an attempt to mislead consumers into believing that the teamLab exhibits were available to be viewed at the MODS Museum, Defendants also engaged and directed a third-party marketing consultant (the "Social Media Consultant") in exchange for monetary compensation, to post verbatim copies of still images owned by teamLab of teamLab's works, on Defendants' website and social media accounts to promote the MODS Museum.

9.     Such acts by Defendants constitute infringement of the images by unlawful reproduction, as well as unlawful public display by posting those images.

10.     Upon information and belief, Defendants and/or their agents or contractors also took pictures of teamLab's physical exhibits and posted them online, thereby creating and publicly displaying unauthorized derivative works of the teamLab exhibits.

## THE PARTIES

11.     teamLab is an interdisciplinary art collective headquartered in Tokyo, Japan and incorporated under the laws of Japan.  It employs numerous artists, designers, computer scientists, and engineers to create large-scale digital works of art in the form of interactive experiential displays.

12.     The mission of the collective is to explore the relationship between humanity and nature by creating immersive digital art exhibitions that provide viewers with a unique aesthetic and sensory experience.

13.     MODS is a California limited liability company formed in 2018 that, upon information and belief, operates the MODS Museum.  The MODS Museum space in

Los Angeles opened in or about May 2019; the MODS Museum claims it is the first museum mainly exhibiting digital art in the United States.

14.     MODS has also recently opened new exhibitions in Hollywood and Las Vegas.

15.     Dahooo is an Illinois corporation, operating as the United States subsidiary of Beijing Dahooo Technology Co., Ltd., which carries on operations (and, upon information and belief, engages in infringing activity) worldwide, including, but not limited to, China's Tongzhou District.     Upon information and belief, Dahooo owns MODS and/or the MODS Museum.

## JURISDICTION AND VENUE

16.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1331.

17.     This Court has personal jurisdiction over MODS because MODS is a California LLC organized and existing under the laws of California, is licensed to do business in California, and is headquartered in Los Angeles, California.

18.     Further, a substantial portion of the conduct at issue occurred in this judicial district.

19.     The Court has personal jurisdiction over Dahooo because, on information and belief, MODS is an alter-ego of Dahooo in that Dahooo owns and controls MODS and/or the MODS Museum such that MODS and/or the MODS Museum are Dahooo's mere instrumentalities; it shares managers and/or directors with Dahooo; it is not separate from Dahooo in any meaningful way; and to allow Dahooo to avoid jurisdiction in California would promote injustice.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to teamLab's claims occurred in this judicial district.

21.     teamLab has standing and the capacity to sue for copyright infringement because, as a Japanese company, it is entitled to enforce its copyrights in the United States pursuant to 17 U.S.C. § 104(b)(1)-(2) and the Berne Convention for the Protection of Literary and Artistic Works (to which the United States is a party through the Berne Convention Implementation Act of 1988).

22.     Even though its copyright registrations in its exhibits are pending, teamLab is entitled to sue in federal court because its works are not "United States Works" as defined by the Copyright Act.  *See id.* §§ 101; 411(a).

23.     As such, teamLab maintains exclusive rights under the Copyright Act, 17 U.S.C. § 106, including the right to reproduce its original works and to distribute and publicly display the same and copies thereof, to create derivative works, and to allow others to create derivative works and engage in unauthorized public display and distribution of its original works.

## INTRADISTRICT ASSIGNMENT

24.     This action should be assigned to the Los Angeles Division, because this action arises in Los Angeles County.

## FACTS

teamLab Background

25.     Established in 2001, teamLab owns the copyrights in and to dozens of mixed-media interactive audiovisual and sculptural works that have appeared in public exhibitions (in both permanent collections and limited exhibitions) around the world for many years.  teamLab also owns the copyrights in and to still images depicting its works.

26.     Article 15 of the Japanese Copyright Law (Act No. 38 of May 6, 1970) states: "For a work (except a work of computer programming) that the employee of a corporation or other employer . . ., makes in the course of duty at the initiative of the

5

corporation, etc., and which the corporation, etc. makes public as a work of its own authorship, the author is the corporation, etc., so long as it is not stipulated otherwise in a contract, in employment rules, or elsewhere at the time the work is made." Under Japanese law, teamLab is the author and owner of all of its works, including the works at issue here.  teamLab is therefore the legal owner of all copyright rights therein because the works are collaborative pieces of art designed, programmed, and created by artists employed by teamLab, Inc., the collective's corporate entity.

27.    teamLab has been creating interactive works of art for more than 15 years, and has put on exhibitions around the globe, including in London, Sydney, Singapore, Istanbul, and Pace's Art + Technology Gallery in Menlo Park, California; in 2018, it opened a 107,000-square-foot interactive museum in Tokyo, *teamLab Borderless*.

28.    The exhibits – which often cost millions of dollars to create – have earned teamLab prestigious recognitions including the Thea Award for Outstanding Achievement for themed entertainment, an impressive accolade similarly awarded to both Tokyo DisneySea and Universal Studios Japan.

29.    teamLab has worked with prominent global clients such as Paris' La Villette, Marina Bay Sands Pte. Ltd., National Museum of Singapore, and Pace Gallery. teamLab's collaboration with Paris' La Villette gained significant global attention as the centerpiece of the Japan-France 150th anniversary joint project celebrating the establishment of diplomatic relations between the two countries.

30.    teamLab's works and art exhibitions have also appeared in popular culture – for example in a music video of rapper and producer DJ Swizz Beatz – and have been licensed for advertisements and profiled by mainstream American media outlets such as CNN and Vice.

teamLab's Original Works and Defendants' Infringing Works

*teamLab Original Work "Boundaries"*

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

31.     The first teamLab exhibit Defendants have infringed is a composite exhibition of two interrelated and intertwined works exhibited together in the same space titled "Universe of Water Particles, Transcending Boundaries" (created and published in Japan in 2013) and "Flowers and People, Cannot be Controlled but Live Together" (created in Japan and published in London in 2015) (collectively, "Boundaries"); the second is titled "Crystal Universe" ("Crystal"; together with "Boundaries," the "Original Works").

32.     "Boundaries" is an original work of sculptural visual art that was created (as a merger of the two works mentioned above) by teamLab in Japan by Japanese artists in 2017 and was first displayed at Pace Gallery in London from January 25 through March 11, 2017.  "Boundaries" appeared in part as follows:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.





33. "Boundaries" (a video of which is available at https://www.youtube.com/watch?v=bqDeXfWKb-k), contains numerous protectable, copyrightable elements, including, but not limited to, water expressed as a continuum of innumerable light-blue particles; a waterfall expressed by flowing water which is a collection of streaks of particles; water flowing uninterruptedly from a waterfall onto the floor; multicolored flowers drawn behind the waterfall on the walls and floors; when a person stands on the actual work, that person becomes an obstacle for the streams of water as if a rock is blocking the water flow, and the work gives off the effect of changing water flow as a result of the person standing in the water; and the work is also

9

designed so that certain elements produce the effects of blooming flowers whenever a person stands in the flowing body of water and hinders the water flow.

34.   The effect is that a part of the work of art is ever transforming as a result of the presence of viewers.  It was created by utilizing the technique by which the 3D space is recognized like flat space as used in ancient Japanese paintings.

35.   "Boundaries" was created by a team of artists, graphic designers, and computer programmers over a six-year period, who created image boards and key visuals, modeled the visuals through 3D data modeling, and ultimately rendered the visuals in the form of perceptible digital animation in a 3D space.  These digital elements are saved and stored in computer memory. teamLab technicians and artists also selected and installed special projectors and sensors as part of the overall work in the exhibition space to create an immersive sculptural experience and used blended images using multiple projectors and integrated and aligned sensors to supply images and music.

36.   In this sense, "Boundaries" is a visual work of art created in a fixed 3D space which is a combination of physical elements and digital elements, and is fixed as one work by both elements being fixed in a tangible medium of expression (including in the room housing the exhibition, in electronic media, and via the projectors and sensors noted above), for more than a transitory duration.

37.   The digital images of "Boundaries" (like the water flow on the ground and the blooming flowers, providing the sensation of motion and passage of time) vary in accordance with the underlying computer algorithm that is designed and programmed by teamLab's artists and programmers.  This variety is not dependent on a viewer's acts, and the large-scale elements of "Boundaries" such as the location of the major elements like the waterfall, are constant.  Since only some of the digital images in "Boundaries" vary due to viewers' acts in accordance with the algorithm, such viewers'

acts do not have influence on the vast majority of other parts of "Boundaries," and as described above, this work exists without viewers' acts.  Interactivity is one feature of "Boundaries" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of "Boundaries."

38.   "Boundaries" is subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of its first publication, one or more of its authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and because "Boundaries" was first published in a foreign nation that, as of that date, was a treaty party, namely the United Kingdom.

*Defendants' Infringing Work "Season Dream"*

39.   Upon information and belief, in or around September of 2018, over a year after "Boundaries" debuted, Defendants engaged a third-party contractor to provide the equipment, technology, and design of an exhibit entitled "Season Dream."

40.   Upon information and belief, while Defendants claim to have created the "idea," of "Season Dream," the third-party contractor implemented the idea and provided specific designs.

41.   "Season Dream" appears in part as follows:



TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25
26



27
28

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   42.   An illustrative side-by-side comparison of the similarities between
16 "Boundaries" and "Season Dream," as shown below, with "Boundaries" in the left
17 column and "Season Dream" in the right, demonstrates some of the many copied
18 protectable expression of "Boundaries," including, but not limited to, the use of
19 multicolored flowers flowing across the ground, the streams of light/water cascading
20 down the wall and onto the ground, and the interactivity of the work responding to the
21 user's proximity to the exhibit.  Both works also contain artwork flanking either side of
22 the waterfall giving off the appearance of outer space or stars, or other natural
23 phenomena:

24
25
26
27
28

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.









TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.










TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1

*teamLab Original Work "Crystal"*

2

    43.    teamLab's work "Crystal" is an original work of sculptural art created by

3

teamLab in Japan in 2015 and was first displayed at Pola Museum Annex in Japan in

4

2015.   It appeared in part as follows:

5

6

7

8

9



10

11

12

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7



8   44.   "Crystal"   (a   video   of   which   is   available   at
9   https://www.youtube.com/watch?v=NoDK3dZ8q4M), is an interactive installation
10  consisting of lights forming a sculpture.

11  45.   It contains numerous protectable elements, including, but not limited to,
12  the specific orientation of the lights in the room, similar use of colors (purple and blue
13  in particular), and the use of blinking patterns.  "Crystal" also use mirrors and reflective
14  floor and ceiling surfaces to create an illusion of infinite lights.

15  46.   Viewers can walk through the space, feeling as if they are surrounded by
16  lights, and their positioning and interaction, among other things through a smartphone
17  app, influences how the lights forming the sculptural aspects of the work appear.

18  47.    "Crystal" was created by a team of artists, graphic designers, computer
19  programmers, and technicians over a one-year period, who created image boards and
20  key visuals, modeled the visuals through 3D data modeling (the digital elements being
21  saved and stored in computer memory), and ultimately rendered the work by installation
22  of LED lights in the space, in the form of a highly creative and painstakingly arranged
23  physical light display.  teamLab technicians selected and installed special hardware
24  including LED lights and sensors.  teamLab technicians also developed an application
25  for smartphones to interact with "Crystal."

26
27
28

48.     In this sense, "Crystal" is a visual work of art created in a fixed 3D space combining physical and digital elements and is fixed as one work by both elements in a tangible medium of expression (including in physical lights, electronic media, and via the sensors noted above) for more than a transitory duration.

49.     In "Crystal," the sculptural work of LED lights which constitutes the work does not vary and the sculptural work of LED lights is controlled by an underlying computer algorithm designed and programmed by teamLab's artists and programmers that is not dependent on viewers' acts.  Viewers can walk through the installation and use a smartphone app to create further changes, and the change is part of the sculptural work created by lighting of the LED lights.  Also, the sculptural work of LED lights itself remains fixed and most of the other parts of the work do not change.  Interactivity is one feature of "Crystal" and viewers' acts simply add an extra dimension to the work. in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of "Crystal."

50.     "Crystal" is best described per the teamLab website as "an accumulation of light points to create a sculptural body, similar to the way distinct dots of color form an image in a pointillist painting."

51.     "Crystal" is subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of its first publication, one or more of its authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and because "Crystal" was first published in a foreign nation that, as of that date, was a treaty party, namely Japan.

1

*Defendants' Infringing Work "Galaxy Dream"*

2      52.      Upon information and belief, in or around September of 2018, nearly three

3   years after "Crystal," debuted, Defendants engaged another third-party contractor to

4   provide the equipment, technology, and design of a substantially similar exhibit, entitled

5   "Galaxy Dream."

6      53.      Upon information and belief, while Dahooo claims to have created the

7   "idea," of Galaxy Dream, the third-party contractor implemented the idea and provided

8   specific designs.

9      54.      "Galaxy Dream" appears in part as follows:

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

teamLab Inc.'s Second Amended Complaint against
Museum of Dream Space, LLC, *et ano*.

1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24



25    55.    An illustrative side-by-side comparison of the similarities between

26  "Crystal" and "Galaxy Dream," as shown below, with "Crystal" in the left column and

27
28

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

"Galaxy Dream" in the right, demonstrates some of the many copied protectable expression of "Crystal," including, but not limited to, the specific orientation of the lights in the room, similar use of colors (purple and blue in particular), and the use of blinking patterns.  Considered together, these elements are substantially similar.  Both exhibits also use mirrors and reflective floor and ceiling surfaces to create an illusion of infinite lights:




TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



56.     Defendants undoubtedly had access to teamLab's works prior to creating the Infringing Works.

57.     Defendants admitted in publicly available comments in their own social media posts that they had access to teamLab's works, acknowledging that MODS exhibits look similar to teamLab works (highlighting added):



TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

58.    As further proof of access, Defendants also copied verbatim text from teamLab's website that teamLab used to describe its works of art.  For instance, the following appeared on the MODS Museum website:



The very same text can be found on the teamLab website, which was established in 2003, well before the MODS Museum website was created:



Digital technology enables complex detail and freedom for change. Before people started accepting digital technology, information and artistic expression had to be presented in some physical form. Creative expression has existed through static media for most of human history, often using physical objects such as canvas and paint. The advent of digital technology allows human expression to become free from these physical constraints, enabling it to exist independently and evolve freely.

59.    The substantial similarities between teamLab's original exhibits and Defendants' knockoffs were noted in many reviews of the MODS Museum.  For example, in a review of the MODS Museum posted on May 13, 2019 (available at

https://www.timeout.com/los-angeles/things-to-do/museum-of-dream-space),
TimeOut's reviewer noted the following:

> Tokyo's teamLab—which, to be clear, has nothing to do with this photo op at
> the Beverly Center—creates immersive, simply astounding digital installations
> both in Japan and around the world (including here in L.A. at the upcoming
> Academy Museum). So why bring it up? Because as the latest "museum of…"
> starts to creep into your Instagram feed, we thought it was important to point
> out just how inelegantly derivative the Museum of Dream Space is of
> teamLab's creations (with a little Yayoi Kusama cribbing thrown into the mix,
> as well). Will you walk away with Insta photos that pop? Probably. But don't
> expect an experience with quite the same level of polish.

60.     Furthermore, as mentioned below, the Defendants (and, upon information
and belief, the Social Media Consultant, at the direction of Defendants) copied still
images of teamLab's exhibits in order to advertise the MODS Museum in their online
postings and attempted to pass off teamLab's works as their own at the MODS
Museum exhibition.  Such acts by the Defendants make it even more evident that the
Defendants had access to teamLab's works and that the Defendants consciously
copied teamLab's works.

*The teamLab Still Images*

61.     Various still images owned by teamLab depict teamLab's exhibits
(hereinafter, collectively, the "teamLab Images").  The teamLab Images were created
by teamLab in Japan by Japanese artists employed by teamLab by photographing live
teamLab exhibits.  The teamLab Images appear on teamLab's website.

62.     The teamLab Images, as still-image works of visual art, are fixed and
original with teamLab.

63.     The timing of creation for the teamLab Images is set forth in the
following table.  The teamLab Images are considered "unpublished" under 17 U.S.C.
§ 104(a) because no copies were ever distributed to the public by sale, transfer of

24

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1 ownership, or by rental, lease, or lending or offered to a third party for further

2 distribution.

3

| teamLab Image | Timing of Creation |
|---|---|
|  | July 2016 |
| | July 2016 |

|  | June 2018 |
|  | June 2018 |
|  | June 2018 |

teamLab Inc.'s Second Amended Complaint against
Museum of Dream Space, LLC, *et ano.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 June 2018

 February 2015

 June 2018

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

| | |
|---|---|
|  | September 2016 |
|  | June 2018 |
|  | June 2018 |

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

|  | June 2018 |
|---|---|

64.  The teamLab Images are subject to protection under the Copyright Act, 17 U.S.C. § 104(a), because as unpublished works, their national origin is irrelevant. Nonetheless, they were authored by nationals or domiciliaries of a treaty party as defined in 17 U.S.C. § 101, namely, Japan, and posted on teamLab's website.

65.  Upon information and belief, in or around 2018, Defendants contracted with the Social Media Consultant to manage their social media presence.

66.  Upon information and belief, Defendants, at all times, had the ability to supervise and/or oversee any and all postings on their social media pages by the Social Media Consultant.

67.  Upon information and belief, in an attempt to pass off teamLab's works as their own in order to draw attention and ticket sales to the nascent MODS Museum and its planned grand opening, Defendants provided the Social Media Consultant with the teamLab Images and directed the Social Media Consultant to post the teamLab Images verbatim on MODS' website.  These direct duplications are listed in the table below; the teamLab Images appear in the left column and the Defendants' infringing uses (collectively, the "Infringing Images") appear in the right column.

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*







TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



33



68.     Once teamLab discovered the teamLab Images on the MODS website and demanded that the teamLab Images be removed, MODS Vice President Charles Chang admitted to the Social Media Consultant that Defendants copied the images, as shown in Telegram messenger screenshot excerpted below:



TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

69.     Third-party websites even took notice of MODS' copying of well-known teamLab images, for instance, at https://wacowla.com/blog/2019/01/23/museum-of-dream-space-open-spring-2019/:



Although there is not much information at present, from the pictures of the official website, you can see the "forest of Resonating Lamps", "Universe of Water Particles on a Rock where People Gather" and "Crystal Universe", which are famous for the Japanese teamLab team. works. What kind of experience the Museum of Dream Space will bring to visitors, waiting to be revealed at the opening of the museum on April 1st!

*Defendants' Photographs of other teamLab Exhibits*

70.     Upon information and belief, Defendants, or someone on their behalf, photographed various other teamLab exhibits, which the aforementioned Social Media Consultant posted online at the direction of Defendants to promote the MODS Museum. The photographs of the exhibits constitute unauthorized derivative works of the exhibits (the "Infringing Derivatives").

71.     To the extent Defendants claim that the Infringing Derivatives were taken with teamLab's permission (which teamLab does not concede), permission was never given to MODS to use the Infringing Derivatives in advertisements.

72.     The teamLab exhibits at issue include works titled "Forest of Resonating Lamps," "Universe of Water Particles on a Rock Where People Gather," and "Wander

35

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

through the Crystal World."  They are collectively referred to as the "Photographed Exhibits."

73.    The Photographed Exhibits are original works of art whose authorship originated with teamLab.

74.    "Forest of Resonating Lamps" is a 3D sculptural exhibition consisting of Murano glass lamps suspended from the ceiling of a mirrored room (a video of the work appears at https://www.youtube.com/watch?v=7mK_uOqiQik).  The lamps are arranged in a staggered configuration that forms a static sculptural grid through which viewers can walk.  The lamps change lighting and colors in accordance with a computer algorithm designed and programmed by teamLab's artists and programmers, with these digital elements being saved and stored in computer memory.  Also, the proximity of viewers changes a part of the lamps' lighting and colors subsisting in the work in accordance with the algorithm, but the Murano glass lamps themselves and the arrangement of the lamps and the lighting and colors of most of them are not affected by viewers' acts.  Interactivity is one feature of "Forest of Resonating Lamps" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of this work.

75.    "Forest of Resonating Lamps" is a sculptural work of visual art created in a fixed 3D space which combines physical and digital elements and is fixed in a tangible medium of expression (including electronic media and physical items such as Murano glass lamps) for more than a transitory duration.

76.    "Universe of Water Particles on a Rock Where People Gather" (seen here https://www.youtube.com/watch?v=iUSXVxOb4Hk) is similar in appearance and nature to "Boundaries" and the process of its creation largely mirrors that of "Boundaries," as described above.   It is an experiential 3D sculptural work housed in

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

a three-dimensional space simulating water falling onto a rock where the flow of the water draws the shape of the waterfall.  In this sense, it is a visual work of art created in a fixed 3D space combining physical and digital elements and is fixed as one work by both elements being fixed in a tangible medium of expression (including the space housing the exhibit and geographic features therein, electronic media on which the digital elements are saved and stored, and projectors, and sensors) for more than a transitory duration.

77.   As with "Boundaries," the digital images of this work (like the water flowing on the ground and the blooming flowers) vary in accordance with an underlying computer algorithm that is designed and programmed by teamLab's artists and programmers. This variety is not dependent on viewers' acts.  Only a part of digital images of this work vary due to viewers' acts in accordance with the algorithm, and the vast majority of this work of art exists without viewers' acts, and large-scale elements of the work, such as the location of the waterfall and rock, are constant. Viewers' acts simply add extra elements to the work.  Since only some of the digital images in "Universe of Water Particles" vary due to viewers' acts in accordance with the algorithm, such viewers' acts do not have influence on the vast majority of other parts of the work and as described above, this work exists without viewers' acts.  Interactivity is one feature of "Universe of Water Particle" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of "Universe of Water Particles."

78.   "Wander through the Crystal World" (seen here https://www.youtube.com/watch?v=htGsCscBRIk)  is similar in appearance and nature to "Crystal," and the process of its creation largely mirrors that of "Crystal," as described above.  This work is a combination of physical elements and digital elements and is created in a fixed 3D space, and the work is fixed as one work by both elements

being fixed in a tangible medium of expression (including the LED light fixtures and electronic media on which the digital elements are saved and stored) for more than a transitory duration.

79.    "Wander through the Crystal World" is similar to "Crystal" in that the fixed sculptural work of LED lights itself which embodies this work does not vary and the appearance of the lights is primarily controlled by the underlying computer algorithm designed and programmed by teamLab's artists and programmers and is not dependent on viewer's acts.  Viewers can walk through the installation and use a smartphone app to create certain changes, and the changes are part of the sculptural work that is created by lighting of the LED lights, but the sculptural work of LED lights itself remains fixed. In this sense, viewers' acts simply add extra elements to the work. Interactivity is one feature of "Wander through the Crystal World" and simply adds an extra dimension to the work; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of this work.

80.    "Wander through the Crystal World" is also best described per the teamLab website as "an accumulation of light points to create a sculptural body, similar to the way distinct dots of color form an image in a pointillist painting."

81.    The Photographed Exhibits were created in Japan.  The timing of their creation, and their dates and locations of first publication (via public exhibitions) is as follows: "Forest of Resonating Lamps" (Created September 2016; published September 2, 2016 in France); "Universe of Water Particles on a Rock Where People Gather" (Created June 2018; published June 21, 2018 in Japan); "Wander through the Crystal World" (Created June 2018; published June 21, 2018 in Japan).

82.    The Photographed Exhibits are subject to protection under the Copyright Act, 17 U.S.C. § 104(b), because on the date of their first publication, one or more of their authors were nationals or domiciliaries of a treaty party as defined in 17 U.S.C. §

101, namely, Japan, and because they were first published in a foreign nation that, as of that date, was a treaty party, namely Japan or France.

83.     Defendants' Infringing Derivatives are listed below, with images of the Photographed Exhibits appearing in the left column and the Infringing Derivatives appearing in the right column.



teamLab Inc.'s Second Amended Complaint against
Museum of Dream Space, LLC, *et ano*.



40

Discovery of the Infringements

84.    In early 2019, teamLab discovered that Defendants – who had not yet opened the MODS Museum – were promoting and advertising the upcoming grand opening of the MODS Museum on the internet via a website (www.modsla.com) and social media accounts (including Facebook and Instagram) using images of teamLab's works.  These images consisted of the Infringing Images and Infringing Derivatives.

85.    teamLab began receiving correspondence, a selection of which is excerpted below, from confused consumers who believed that – due to Defendants' copying of teamLab's works – the MODS Museum was associated with teamLab:

41

1

2

Subject:   Your work has been copied, copyright infringement
Details:   Teamlab,

3

4

I'm a fan of your work, and i recently saw on Instagram your work has been copied. This museum called\
"MODS - museum of dream space" has used your rendering / photos for their advertising of their
exhibitions. It's sad to see great work been replicated without your consent. Not sure if you want to take
action on this. But as a huge fan, I would like to at least share with finding with you.
https://www.facebook.com/events/218378349102159/

5

6

https://www.mods-museum.com/?fbclid=IwAR09AjtOzxmrFKssSN-DaxDfmvuIHN-
g_jK1wAiO0dZwMAGMmkbegFQXgs4

7

Thank you,

8

9

10

Qtype: About Project
Your Name:
Company Name:

11

Mail:
Tel:

12

Company address:   Los Angeles
-----------------------------------------------------------------------

13

Subject:   Museum in Los Angeles
Details:   Hello.

14

My name is                          I am based in Los Angeles writer and
                                                                           I found your

15

amazing teamLab Borderless project on the web and wanted to mention it in my article. Yesterday I'v seen
an ad of this new upcoming project: https://www.mods-museum.com/There are similar images but I couldn't

16

find any mention of your project. Will it be the same exhibition and would any creator of original teamLab
Borderless be presented on the grand opening? Thank you.

17

18

19

Hello,

20

I'm a big fan of your work and excited to experience it for the first time in Singapore next year.  I saw
this event is coming to Los Angeles and it looks like a complete copy of all your amazing designs

21

22

https://www.mods-museum.com/

23

Just wanted to make sure you're aware.

24

Thanks,
Christina

25

26

27

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

28

1

2

3

Subject:   Exhibit in USA Copying TeamLab's Concept
Details:   Hi,

4

5

There is an exhibit in LA that appears to be copying several of teamLab's exhibits and designs, called "Museum of Dream Space" by MODS: https://www.mods-museum.com/?fbclid=IwAR3FPDAlcYB1tKgfoeyfMnCV-3Sk-MIVmCxm16sdzGa3xkQk52QFPgu1kM4&utm_source=as

6

7

I wanted to make sure teamLab is aware of this. I am a big fan of your art and to see it recreated without giving any credit feels wrong.

8

9

My name is ███████████████████ I currently live in the Los Angeles.

10

Last year, I had a chance visit Tokyo and went to the borderless show. I love the show and always want to visit one more time.

11

12

Couple days ago, I found this museum online and it seems share a lot of projects from you. However, I can't find any info relate to Teamlab.

13

https://www.mods-museum.com/

14

My question is this show also made by you or it just some plagiarizing works?

15

Thanks,

16    86.    In February 2019, teamLab demanded the removal of certain images and

17  videos, including Infringing Images and Infringing Derivatives, from the MODS

18  website and social media accounts, and the removal of infringing content from MODS'

19  upcoming exhibition, that bore substantial similarities to teamLab's works and images

20  and videos of works.  At around that time, teamLab also became generally aware of

21  Defendants' practice of fashioning MODS' exhibits by means of copying other

22  international organizations and artists apart from teamLab itself, through a comparison

23  of MODS exhibits with the Swarovski Kristallwelten "Crystal Dome" installation and

24  Yahoi Kusama's "Infinity Mirrored Room," for example.

25

26

27

28

43

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, ET ANO.

87.     In March and April 2019, teamLab continued to find infringing images and videos on the MODS website, on YouTube, and on social media platforms.  Many of those works remain live and online.

88.     In May 2019, MODS proceeded to publicly display the Infringing Works starting at the MODS Museum grand opening.

89.     In August 2019, teamLab filed the instant lawsuit.

90.     In March 2020, teamLab discovered that, in addition to the infringing acts described above, and during the pendency of this lawsuit, MODS had taken material steps to open two new exhibitions, one located in Hollywood (https://modshollywood.com/) and one located in Las Vegas (https://modsvegas.com/), which appear to feature the Infringing Works from the MODS Museum, or at the very least, use images and/or videos of those Infringing Works to advertise the new spaces, as shown below:



TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.



91.     Upon information and belief, there is further reason to suspect that the Infringing Works will be featured at the new MODS locations, as Defendants have refused to produce information cataloguing the works to be displayed, to which end teamLab reserves the right to seek a temporary restraining order or preliminary injunction should it learn of further infringement of the Original Works at the new locations.

92.     Indeed, upon information and belief, the opening of the two new MODS locations is imminent, or has already occurred.

93.     teamLab further discovered that, upon information and belief, MODS allowed musician Justin Bieber's music video for his song entitled "Intentions (CHANGES: The Movement) ft. Quavo" (the "Intentions Video") to be filmed on premises at the MODS Museum, including within "Galaxy Dream" and "Season Dream."

94.     Upon information and belief, Defendants were aware of and facilitated and encouraged the producers of the Intentions Video to film within the MODS Museum and in the Infringing Exhibits.

95.     Screenshots showing the Infringing Works as featured in the Intentions Video are below:

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

**"Season Dream"**



**"Galaxy Dream"**



96.     Since learning of the Intentions Video, teamLab issued a takedown notice to seek removal of the Intentions Video from all platforms on which it appears, which was complied with.

97.     By continuing to use the Infringing Images and Infringing Derivatives, by publicly displaying the Infringing Works, creating new exhibitions for their

46

infringements, by supervising infringing activity that they directly benefited from, and by facilitating, including, causing, or materially contributing to the use of the Infringing Works by others in infringing derivative works (such as the Intentions Video), Defendants have consciously flouted their legal obligation to refrain from infringing teamLab's copyrights in the Original Works, the teamLab Images, and the Photographed Exhibits, particularly during the pendency of this litigation.

## CLAIMS FOR RELIEF

## COUNT I

## DIRECT COPYRIGHT INFRINGEMENT – ORIGINAL WORKS

## (17 U.S.C. § 501)

98.    teamLab incorporates the allegations of Paragraphs 1 through 97 of its Second Amended Complaint as if restated herein.

99.    teamLab's Original Works, including "Boundaries" and "Crystal," are original works fixed in tangible mediums of expression in the form of pictorial, graphic, or sculptural works, and/or audiovisual works.  teamLab's Original Works, including "Boundaries" and "Crystal," are therefore protected under § 102(a)(5)-(6) of the Copyright Act.

100.    Each of the ultimate artworks "Boundaries" and "Crystal" is a combination of physical elements and digital elements created in a fixed 3D space by human authors, and is fixed as one work by both elements being fixed in tangible mediums of expression (including electronic and physical media) for more than transitory duration. "Boundaries" and "Crystal" are perceptible by one's senses for more than a transitory duration because physical elements are unchangeable; aspects of the digital elements (saved and stored in computer memory), *i.e.*, sights, sounds, and experiences, vary in accordance with a computer algorithm upon which these works are built; because the overall design and placement of the major artistic elements and structures in the Original

Works as a whole is constant; and because the Original Works are perpetual in that they continually show their artistic content with or without viewers present.

101.   Further, the fixation of the audiovisual aspects of the Original Works' fixation is made simultaneously with their transmission, and as works that incorporate elements of improvisation, viewer participation during the Original Works' performance does not undermine their fixation.   Interactivity is one feature of "Boundaries" and "Crystal" and simply adds an extra dimension to the works; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of the Original Works.

102.   teamLab owns the copyrights in the Original Works as works for hire by its employees.

103.   Defendants had access to teamLab's works, including the Original Works, and were aware of the existence of the same prior to creating their Infringing Works. Defendants admitted as much in social media posts as well as through copying the teamLab Images to advertise the MODS Museum, copying text verbatim from teamLab's website, and attempting to pass off photos taken at teamLab exhibitions as MODS works.

104.   Defendants have copied protected expression from teamLab's work "Boundaries" into "Season Dream," including without limitation the multicolored flowers drawn behind the waterfall on the walls and floor of the exhibit, and the streams of water cascading down the wall and onto the ground.  Both works also contain artwork flanking either side of the waterfall; while those individual pieces may be different, they both give off the appearance of outer space, stars, or organic plant life.

105.   To the extent any individual element is not itself protectable, the unique selection, arrangement, and coordination of elements (both copyrightable, such as specific graphical artwork rendered during the exhibit, and uncopyrightable, such as

any purely ephemeral elements and stylistic and technological techniques and choices that make the Original Works unique) in "Boundaries" is protectable and Defendants' work "Season Dream" replicates the original and protectable selection, arrangement, and coordination of teamLab's work. "Season Dream" is substantially similar in total concept and feel to "Boundaries."

106.   Defendants have copied protected expression from teamLab's work "Crystal" into "Galaxy Dream," including without limitation, the orientation of the lights in the room, the similar use of colors, the use of blinking patterns, and the use of mirrors and reflective floor and ceiling surfaces to create an illusion of infinite lights.

107.   To the extent any individual element is not itself protectable, the unique selection, arrangement, and coordination of elements (both copyrightable, such as the arrangement of LED lights and specific graphical artwork rendered during the exhibit, and uncopyrightable, such as any purely ephemeral  elements and stylistic and technological techniques and choices that make the Original Works unique) in "Crystal" is protectable and Defendants' work "Galaxy Dream" replicates the protectable original selection, arrangement, and coordination of teamLab's work. "Galaxy Dream" is substantially similar in total concept and feel to "Crystal."

108.   Defendants did not procure a license or any other form of permission to copy any protectable elements of teamLab's Original Works, and as such any copying was unauthorized.

109.   Defendants' work "Season Dream" is substantially similar to teamLab's "Boundaries."

110.   Defendants' work "Galaxy Dream" is substantially similar to teamLab's "Crystal."

49

111.   Defendants have infringed teamLab's exclusive rights under 17 U.S.C. §§ 106(1) & (5) by reproducing and publicly displaying protected elements of the Original Works.

112.   teamLab has been extensively damaged by Defendants' infringement of the Original Works.

113.   teamLab routinely receives license fees in the range of one million to several million dollars for six-month licensing periods in connection with exhibitions of its works.  These fees can be fixed or contingent based on revenue generated by a given exhibition, or a combination of both.

114.   teamLab exhibitions attract significant visitors and generate millions of dollars in revenues.  For instance, from the time it opened on June 21, 2018, teamLab's Tokyo museum *teamLab Borderless*, welcomed about 2,300,000 visitors, many of whom stated, in response to a survey, that they traveled to Tokyo specifically to visit teamLab's museum.  *teamLab Borderless* garnered more than $50,000,000 in total earnings within a year of its opening.

115.   License fees in connection with the use of teamLab's works in commercial advertising projects generate hundreds of thousands of dollars' worth of fees.

116.   Upon information and belief, Defendants continue to reap significant financial benefits, including ticket sales and other profits, by displaying the Infringing Works as part of the MODS Museum exhibition.

117.   Upon information and belief, Defendants reaped significant profits on the back of teamLab's copyrighted works.

118.   Defendants' copyright infringements are and have been knowing, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

119.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants

have no intention of ceasing their infringements and have, rather, created and opened additional exhibitions, including in Hollywood and Las Vegas.

120.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

## COUNT II

## VICARIOUS COPYRIGHT INFRINGEMENT – ORIGINAL WORKS

121.   teamLab incorporates the allegations of Paragraphs 1 through 120 of its Second Amended Complaint as if restated herein.

122.   To the extent Defendants claim that the third-party contractors caused the infringement of the Original Works, upon information and belief, Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the creation and operation of the MODS Museum, including with respect to the Infringing Exhibits.

123.   Upon information and belief, Defendants also had the right and ability to stop or limit infringement committed by third-party contractors, whom Defendants hired, in creating the Infringing Exhibits.

124.   However, Defendants declined to exercise their right to stop or limit the third-party contractors' infringement upon teamLab's copyrights.

125.   Defendants profited and continue to profit from the third-party contractors' infringement upon teamLab's copyrights in the Original Works, and therefore have a direct financial interest in the infringing conduct.

126.   Defendants' acts of vicarious copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

127.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

128.   Upon information and belief, Defendants have no intention of ceasing their infringements.  Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further vicarious infringements of its Original Works.

129.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants have no intention of ceasing their infringements and have, rather, created and opened additional exhibitions, including in Hollywood and Las Vegas.

## COUNT III

## CONTRIBUTORY COPYRIGHT INFRINGEMENT – ORIGINAL WORKS

130.   teamLab incorporates the allegations of Paragraphs 1 through 129 of its Second Amended Complaint as if restated herein.

131.   Defendants knew or should have known of the copyright infringements of the Original Works described above.

132.   Upon information and belief, Defendants induced, caused, or materially contributed to the copyright infringements of the Original Works described above, including, but not limited to, by allowing, intentionally inducing, and/or encouraging, and/or materially contributing, and/or assisting with the creation and/or production of the Intentions Video.

133.   Upon information and belief, Defendants knew of the production of the Intentions Video, and encouraged, induced, and permitted the producers of the Intentions Video to access the MODS Museum in order to create the Intentions Video despite the pendency of this litigation.

134.   Defendants' acts of contributory copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

135.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

136.   Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further contributory infringements of its Original Works.

## COUNT IV

## DIRECT COPYRIGHT INFRINGEMENT – TEAMLAB IMAGES

### (17  U.S.C. § 501)

137.   teamLab incorporates the allegations of Paragraphs 1 through 136 of its Second Amended Complaint as if restated herein.

138.   The teamLab Images are original works fixed in tangible mediums of expression in the form of pictorial or graphic works and are therefore protected under 17 U.S.C. § 102(5).

139.   teamLab owns the copyrights in the teamLab Images as works for hire by its employees.

140.   Defendants had access to the teamLab Images and were aware of the existence of the same prior to creating their Infringing Images given that the Infringing Images are exact replicas of the teamLab Images.

141.   Defendants copied the teamLab Images, if not verbatim than substantially in their entireties, including most if not all original expressive elements thereof, and

posted the unauthorized copies on Defendants' websites and social media accounts in order to advertise the MODS Museum.

142.   Defendants' conduct violates teamLab's rights under 17 U.S.C. §§ 106(1) & (5).

143.   Defendants did not procure a license or any other form of permission to copy the teamLab Images, and as such any copying was unauthorized.

144.   Defendants' Infringing Images replicate the total concept and feel of the teamLab Images

145.   Defendants' Infringing Images are substantially similar to the teamLab Images, and are in fact, identical or nearly identical.

146.   teamLab has been extensively damaged by Defendants' use of the Infringing Images.  teamLab routinely receives fees in the range of approximately $94,000 to $280,000 for granting licenses to third parties to use teamLab's original works in images and/or videos for purposes of advertising third-party products or services.

147.   Upon information and belief, Defendants received significant financial benefits, including profits, by using unauthorized copies of the teamLab Images to advertise the grand opening of the MODS Museum and continued using the Infringing Images to sell tickets even after the MODS Museum opened.

148.   Upon information and belief, Defendants reaped significant profits on the back of teamLab's copyrighted works.

149.   Defendants' copyright infringements are and have been knowing, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

150.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, while certain Infringing Images have

been removed or taken down from various online platforms, upon information and belief, Defendants have no intention of ceasing their infringements.

151.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

## COUNT V

## VICARIOUS COPYRIGHT INFRINGEMENT – TEAMLAB IMAGES

152.   teamLab incorporates the allegations of Paragraphs 1 through 151 of its Second Amended Complaint as if restated herein.

153.   To the extent Defendants claim its Social Media Consultant is responsible for the infringement of the teamLab Images, Defendants are vicariously liable for the infringement alleged herein.

154.   Defendants have the right and ability to supervise their website and social media pages.

155.   Defendants had the right and ability to stop or limit infringement committed by their Social Media Consultant, whom Defendants hired, in copying the teamLab Images, and, in fact, Defendants supplied the teamLab Images to the Social Media Consultant, which they then directed the Social Media Consultant to post online.

156.   Defendants declined to exercise their right to stop or limit the Social Media Consultant's direct infringement upon teamLab's copyrights, and, in fact, facilitated and encouraged it.

157.   Defendants profited and continue to profit from the Social Media Consultant's infringement upon teamLab's copyrights because, *inter alia*, the infringements were used in connection with advertisements and promotional efforts related to the MODS Museum and to drive traffic to the MODS Museum for purposes of ticket sales.

158.   Defendants' acts of vicarious copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

159.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

160.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, while certain Infringing Images have been removed or taken down from various online platforms, upon information and belief, Defendants have no intention of ceasing their infringements.   Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further vicarious infringements of its teamLab Images.

## COUNT VI

## CONTRIBUTORY COPYRIGHT INFRINGEMENT – TEAMLAB IMAGES

161.   teamLab incorporates the allegations of Paragraphs 1 through 160 of its Second Amended Complaint as if restated herein.

162.   Defendants knew or should have known of the copyright infringements of the teamLab Images described above.

163.   Upon information and belief, Defendants induced, caused, or materially contributed to the copyright infringements of the teamLab Images described above, including, but not limited to, by supplying the teamLab Images to the Social Media Consultant, and then directing the Social Media Consultant to post them online.

164.   Upon information and belief, Defendants encouraged, induced, and permitted the Social Media Consultant to post the teamLab Images online to advertise its MODS Museum.

165.   Defendants' acts of contributory copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

166.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

167.   teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, while certain Infringing Images have been removed or taken down from various online platforms, upon information and belief, Defendants have no intention of ceasing their infringements.   Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further contributory infringements of its teamLab Images.

## COUNT VII

## DIRECT COPYRIGHT INFRINGEMENT – PHOTOGRAPHED EXHIBITS

168.   teamLab incorporates the allegations of Paragraphs 1 through 167 of its Second Amended Complaint as if restated herein.

169.   The Photographed Exhibits are original works fixed in tangible mediums of expression in the form of pictorial, graphic, or sculptural works, and/or audiovisual works.  teamLab's Photographed Exhibits are therefore protected under § 102(a)(5)-(6) of the Copyright Act.

170.   Each of the artworks embodied in the Photographed Exhibits consists of a combination of physical elements and digital elements created by human authors, and both elements are fixed in a tangible medium of expression (including in physical spaces, on computer memory, and through projectors and sensors, glass lamps. and LED lights) for more than a transitory duration.  The Photographed Exhibits are fixed and perceptible by one's senses for more than a transitory duration because physical elements are unchangeable; digital elements are saved and stored in computer memory where many aspects of the sights, sounds, and experiences vary in accordance with the works' respective computer algorithms; because the overall design and placement of the major artistic elements and structures in the Photographed Exhibits as a whole is constant; and because the Photographed Exhibits are perpetual in that they continually show their artistic content with or without viewers present.

171.   Further, as discussed above, the audiovisual aspects of the Photographed Exhibits are fixed simultaneous with being transmitted, and as works that incorporate elements of improvisation, viewer participation during the Photographed Exhibits' performance does not undermine their fixation.   Interactivity is one feature of the Photographed Exhibits and simply adds an extra dimension to the works; in light of the protectability of works such as video games, this limited interactivity does not impact the copyrightability of the Photographed Exhibits.

172.   teamLab owns the copyrights in the Photographed Exhibits as works for hire by its employees.

173.   Upon information and belief, Defendants, or someone on Defendants' behalf, photographed the Photographed Exhibits and posted the images on Defendants' websites and social media accounts in order to advertise the MODS Museum.

174.   Defendants had access to teamLab's works, including the Photographed Exhibits, and were aware of the existence of the same prior to creating their Infringing

Derivatives.  Defendants admitted as much in social media posts as well as through copying text verbatim from teamLab's website and attempting to pass off the Infringing Images for teamLab Images.

175.  Defendants have copied protected expression from teamLab's Photographed Exhibits, including without limitation by capturing fixed visual images on which individual discrete expressive design elements of each of the Photographed Exhibits, such as flowing streams of water, multicolored flowers, and fixed sculptural aspects of meticulously arranged suspended lamps and hanging LED lights.

176.  To the extent any individual element is not protectable, the original selection, arrangement, and coordination of elements (both copyrightable, such as specific physical structures and graphical artwork rendered during the exhibit, and uncopyrightable, such as any purely ephemeral elements and stylistic and technological techniques and choices that make the Original Works unique) in the Photographed Exhibits is protectable and Defendants' Infringing Derivatives replicate the protectable original selection, arrangement, and coordination of teamLab's works.

177.  The Infringing Derivatives replicate the total concept and feel of the Photographed Exhibits.

178.  Defendants' Infringing Derivatives are substantially similar to teamLab's Photographed Exhibits.

179.  Defendants did not procure a license or any other form of permission to copy any protectable elements of teamLab's Photographed Exhibits, and as such any copying or creation of derivative works was unauthorized.

180.  Defendants' conduct violates teamLab's rights under 17 U.S.C. §§ 106(2) because photographs of pictorial, graphic, or sculptural works constitute derivative works which must be authorized by the copyright owner, here, teamLab.

59

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

181.   teamLab has been extensively damaged by Defendants' infringement of the Photographed Exhibits largely for the reasons set forth in Counts I and IV, in that teamLab derives substantial licensing revenue from exhibitions of its original works and licensing of images of same for advertising purposes.

182.   Upon information and belief, Defendants received significant financial benefits, including profits, by using its Infringing Derivatives to advertise the grand opening of the MODS Museum and continued using the same to sell tickets even after the MODS Museum opened.

183.   Upon information and belief, Defendants reaped profits far in excess of $75,000 on the back of teamLab's copyrighted works.

184.   Defendants' copyright infringements are and have been knowing, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

185.   Upon information and belief, Defendants have no intention of ceasing their infringements.  teamLab will continue to be harmed by Defendants' infringing conduct and requires this Court's intervention because, upon information and belief, Defendants have no intention of ceasing their infringements.

186.   teamLab has been irreparably harmed and has no adequate remedy at law and is therefore entitled to injunctive relief against Defendants.

## COUNT VIII

## VICARIOUS COPYRIGHT INFRINGEMENT – PHOTOGRAPHED EXHIBITS

187.   teamLab incorporates the allegations of Paragraphs 1 through 186 of its Second Amended Complaint as if restated herein.

188.   To the extent Defendants claim their Social Media Consultant is responsible for the infringement of the Original Works via the display of the Infringing Derivates, Defendants are vicariously liable for the infringement alleged herein.

189.   Defendants have the right and ability to supervise their website and social media pages, and in fact, upon information and belief, Defendants supplied the Infringing Derivatives to the Social Media Consultant, which they then directed the Social Media Consultant to post online.

190.   Defendants had the right and ability to stop or limit infringement committed by third parties handling their social media and advertising such as their Social Media Consultant, whom Defendants hired, in creating and displaying the Infringing Derivatives.

191.   Defendants declined to exercise their right to stop or limit third parties', such as the Social Media Consultant's, infringement upon teamLab's copyrights.

192.   Defendants profited and continue to profit from third parties', such as the Social Media Consultant's, infringement upon teamLab's copyrights.

193.   Defendants' acts of vicarious copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

194.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b)

195.   Upon information and belief, Defendants have no intention of ceasing their infringements.  Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further vicarious infringements of its teamLab Images.

## COUNT IX

## CONTRIBUTORY COPYRIGHT INFRINGEMENT – PHOTOGRAPHED EXHIBITS

196.   teamLab incorporates the allegations of Paragraphs 1 through 195 of its Second Amended Complaint as if restated herein.

197.   Defendants knew or should have known of the copyright infringements of the Original Works via the Infringing Derivatives described above.

198.   Upon information and belief, Defendants induced, caused, or materially contributed to the copyright infringements of the Original Works via the Infringing Derivatives described above, including, but not limited to, by supplying the Infringing Derivatives to their Social Media Consultant, and then directing their Social Media Consultant to post them online.

199.   Upon information and belief, Defendants encouraged, induced, and permitted their Social Media Consultant to post the Infringing Derivatives online to advertise their MODS Museum.

200.   Defendants' acts of contributory copyright infringement have been willful, intentional, and purposeful, in disregard of and indifference to teamLab's rights.

201.   As a direct and proximate result of Defendants' infringements of teamLab's copyrights and exclusive rights under copyright, teamLab is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

202.   Upon information and belief, Defendants have no intention of ceasing their infringements.  Defendants' conduct is causing, and, unless enjoined and restrained by this Court, will continue to cause teamLab great and irreparable injury that cannot fully be compensated or measured in money.  teamLab has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, teamLab is entitled to injunctive relief prohibiting further contributory infringements of its Original Works via the Infringing Derivates.

1

## **PRAYER FOR RELIEF**

2          WHEREFORE, teamLab respectfully requests that it be awarded judgment as

3    follows:

4          1.     Finding Defendants directly, vicariously, and contributorily infringed

5    teamLab's copyrights in and to the Original Works by violating teamLab's right to

6    reproduce, distribute, and/or publicly display the Original Works by means of creating,

7    distributing, and publicly displaying the substantially similar Infringing Works;

8          2.     Finding Defendants directly and/or vicariously infringed teamLab's

9    copyrights in and to the teamLab Images by reproducing, displaying, and distributing

10   exact duplicates of the teamLab Images in the form of the Infringing Images;

11         3.     Finding Defendants directly and/or vicariously infringed teamLab's

12   copyrights in and to the Photographed Exhibits by creating, displaying, and distributing

13   the Infringing Derivatives of the Photographed Exhibits by taking pictures of the

14   Photographed Exhibits and reproducing, publishing, and publicly displaying said

15   pictures on Defendants' websites and social media accounts;

16         4.     Awarding monetary damages pursuant to 17 U.S.C. § 504(b) including (a)

17   teamLab's lost revenues, including without limitation, from lost license fees, royalties,

18   or other revenues or profits that could have been derived from authorized use of the

19   Original Works, the teamLab Images, creation of derivative works of the Photographed

20   Exhibits, and in connection with the Intentions Video; and (b) all profits earned in

21   connection with the Intentions Video from use of the Infringing Works, the Infringing

22   Images, and the Infringing Derivatives, including without limitation, from income

23   derived from ticket sales, merchandise sales, online advertising revenue, and income

24   associated with the Intentions Video; in an amount no less than USD $5,000,000;

25         5.     Issuing a preliminary and permanent injunction ordering Defendants to:

26              a.    immediately dismantle and permanently take down the Infringing

27

28

63

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO.*

Works located at all MODS Museum locations and to refrain, from now and into the future, from reinstating or creating any exhibition, display, or other use of the Infringing Works and any works that are substantially similar to the Original Works or Infringing Works;

b.   immediately delete, take down, or otherwise remove all images and videos from all websites and social media accounts owned, controlled, or operated, directly or indirectly, by Defendants that depict the Original Works and/or the Infringing Works, the teamLab Images and/or Infringing Images, the Photographed Exhibits and/or Infringing Derivatives, and any works, including images and videos, that are substantially similar to any or all of the above;

c.   permanently cease and desist from any further copying, distribution, public display, creation of derivative works, or engaging in any other use of the Original Works and/or the Infringing Works, the teamLab Images and/or Infringing Images, the Photographed Exhibits and/or Infringing Derivatives, and any works, including images and videos, that are substantially similar to any or all of the above, or causing, inducing, requesting, or encouraging any third-party to do the same;

d.   permanently cease and desist from any further infringement of teamLab's copyrights including the creation of any works substantially similar to any works in which teamLab owns copyright rights, or causing, inducing, requesting, or encouraging any third-party to do the same;

e.   issue a public statement on Defendants' website(s) and any social media accounts and platforms owned, controlled, or operated, directly or indirectly, by Defendants stating that the Infringing Works, Infringing Images, and Infringing Derivatives violated teamLab's copyrights and disclaiming any affiliation with teamLab; and

TEAMLAB INC.'S SECOND AMENDED COMPLAINT AGAINST
MUSEUM OF DREAM SPACE, LLC, *ET ANO*.

6.    Awarding teamLab such other and further relief as the Court deems just and proper.

Dated:     January 20, 2020

**COWAN DᴇBAETS ABRAHAMS**

**& SHEPPARD, LLP**

By:  /s/Nancy E. Wolff

Nancy E. Wolff, Esq., No. 133334

Scott J. Sholder, Esq., *pro hac vice*

*Attorneys for Plaintiff*,

TEAMLAB INC.
