Nancy E. Wolff, Esq., No. 133334
nwolff@cdas.com
COWAN, DeBAETS, ABRAHAMS,
& SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394
NWolff@cdas.com

*Attorneys for Plaintiff*
TEAMLAB INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMLAB INC., a Japanese corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>MUSEUM OF DREAM SPACE, LLC, a California limited liability company, and DAHOOO AMERICAN CORPORATION, an Illinois corporation,<br><br>        Defendants. | Case No.:  2:19-cv-06906-VAP-GJS<br><br>**PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**<br><br>(F.R.C.P. R. 26, 37)<br><br>Filed concurrently with the Declaration of Scott J. Sholder and [Proposed] Order<br><br>Date: February 28, 2022<br>Time: 2:00 p.m.<br>Crtrm: 8A<br>Trial Date: May 30, 2022<br><br>Judge: Hon. Virginia A. Phillips |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 28, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Virginia A. Phillips, in the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, plaintiff teamLab Inc. ("teamLab") will bring a motion for spoliation sanctions against Defendants Museum of Dream Space, LLC and Dahooo American Corp. (collectively, "Defendants").

NOTICE IS FURTHER GIVEN that this motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 25, 2022.

teamLab's motion is based on this Notice of Motion, supporting Memorandum of Points and Authorities, Federal Rules of Civil Procedure 26, 37; L.R. 6-1, 7-3, 7-4, 7-5, the Court's Standing Order, the Court file and any arguments made at the hearing should the Court deem a hearing to be necessary.

Dated: January 31, 2022

COWAN DeBAETS ABRAHAMS
& SHEPPARD, LLP

By: /s/ Scott J. Sholder
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*
*Attorneys for Plaintiff*,
teamLab Inc.

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND .................................................................................... 2

ARGUMENT ........................................................................................ 7

I.   DEFENDANTS HAD AN OBLIGATION TO RETAIN THE CHAT
     MESSAGES AT THE TIME THEY WERE DESTROYED. ............................ 9

II.  DEFENDANTS DESTROYED OR ALLOWED THE CHAT
     MESSAGES TO BE DESTROYED WITH A "CULPABLE STATE OF
     MIND". ...................................................................................... 11

III. THE CHAT MESSAGES ARE RELEVANT TO THE PARTIES'
     CLAIMS AND DEFENSES ............................................................... 14

CONCLUSION .................................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
    888 F. Supp. 2d 976 (N.D. Cal. 2012)............................................8–9, 11, 13–14

*Arista Recs. LLC v. Usenet.com, Inc.*,
    608 F. Supp. 2d 409 (S.D.N.Y. 2009) ...................................................10–11

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
    No. 14-cv-1926 (JAK) (SPX), 2016 WL 6609208 (C.D. Cal. July 12,
    2016) ....................................................................................................9

*CTC Glob. Corp. v. Huang*,
    No. 17-cv-02202 (AGK) (ESX), 2019 WL 6357271, at *7 (C.D. Cal.
    July 3, 2019) .................................................................................15–16

*Glover v. BIC Corp.*,
    6 F.3d 1318 (9th Cir. 1993) ....................................................8, 11–12

*Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*,
    No. 11-cv-5639 (EMC) (JSC), 2014 WL 595912 (N.D. Cal. Feb. 14,
    2014) ....................................................................................................9

*Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*,
    322 F. Supp. 3d 1027 (C.D. Cal. 2018) ........................................7–8, 12

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *10 (S.D.N.Y.
    Mar. 12, 2018) .......................................................................................10

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559, 563 (N.D. Cal. 2008) ...................................................8

*PersonalWeb Techs., LLC v. Google Inc.*,
    No. 13-cv-01317 (EJD), 2014 WL 5422933, at *3 (N.D. Cal. Oct. 24,
    2014) ...................................................................................................12

ii

*Wine Educ. Council v. Arizona Rangers*,
   No. 19-cv-02235 (PHX) (SMB), 2021 WL 3550213 (D. Ariz. Aug.
   11, 2021) ..................................................................................................... 2

*Youngevity Int'l v. Smith*,
   No. 16-cv-704 (BTM) (JLB), 2020 WL 7048687, at *2 (S.D. Cal. July
   28, 2020) ............................................................................................. 12–13

**Rules & Statutes**

Fed. R. Civ. P. 37 ................................................................................... 13

**PRELIMINARY STATEMENT**

Plaintiff teamLab Inc. ("teamLab") respectfully submits this memorandum of law in support of its motion to for spoliation sanctions.  This lawsuit alleges that Defendants Museum of Dream Space, LLC ("MODS") and Dahooo American Corp. ("Dahooo") infringed teamLab's copyrights in several original digital immersive art exhibits by publicly displaying their own substantially similar art exhibits.  Charles Chang, the current CEO of both Defendants, testified that numerous communications concerning the conception and design of Defendants' exhibits took place in 2018 over messaging services called Telegram and WeChat.  Defendants have destroyed these messages (or allowed them to be destroyed), and did so after receiving multiple cease-and-desist letters putting them on notice of potential copyright infringement litigation with teamLab.  Mr. Chang in fact admits to intentionally deleting, after receiving the cease-and-desist letters, a group chat conversation that contained many of Defendants' communications regarding the creation and design of their exhibits.

The destroyed messages would have been highly relevant to the claims and defenses in this case.  For example, these messages could have shown that Defendants were aware of teamLab's artwork and intentionally sought to copy it, including by using images thereof for reference materials in designing their infringing exhibits.  And in light of the timing of the multiple cease-and-desist letters, there is no question that Defendants were under an obligation to ensure the preservation of these messages at the time Defendants either destroyed them or failed to take steps to preserve them.  These circumstances warrant, at a minimum, an adverse inference instruction explaining that the jury should presume that the destroyed messages were unfavorable to Defendants.[1]

---

[1] Plaintiff expects that Defendants will argue that this motion is untimely because the motion cannot be fully briefed and heard before the close of discovery.  That argument would be misplaced and would misinterpret this Court's Scheduling Order, [Dkt. No. 117] for several reasons.  First, this motion could not have been filed in time to have been heard before the close of discovery (which would have been by January 3, 2022, factoring in the briefing schedule and the Court's civil motion hearing schedule), since it significantly depends on Mr. Chang's deposition testimony.  Mr. Chang was first

## **BACKGROUND**

A disputed issue in this copyright infringement action is whether MODS and Dahooo were aware of teamLab's original immersive art exhibits, including those works defined in teamLab's pleadings as "Boundaries" and "Crystal Universe" (collectively, the "teamLab Exhibits"), at the time Defendants created their own substantially similar exhibits called "Seasons Dream" and "Galaxy Dream" (collectively, the "MODS Exhibits").  It is undisputed that Defendants were aware of the teamLab Exhibits before they publicly displayed the MODS Exhibits at the May 2019 grand opening of MODS' museum in Beverly Hills (the "MODS Museum").  *See, e.g.*, Chang 1/6/22 Dep. 109:25-111:10 (Ex. 1 to Declaration of Scott J. Sholder dated January 31, 2022 ("Sholder Decl.")) (photographs of teamLab's exhibits were circulated prior to the grand opening in connection with marketing); MODS002858 (Ex. 2 to Sholder Decl.) (Mr. Chang stating in a January 2019 email that MODS' "artwork is illuminated by TeamLab's work").    However, Defendants have maintained throughout the litigation that they were not aware of the teamLab Exhibits at the time the MODS Exhibits were created and that teamLab's art was never considered in the design of the MODS Exhibits.

According to the testimony of Mr. Chang, the MODS Exhibits were designed by Dahooo's parent company in China ("Dahooo China") in collaboration with two third-party Chinese contractors and a third-party consultant based in the United States named Kristina Drobachevskaia ("Kristina"), who worked extensively with Defendants to

---

deposed on January 6 and January 7, and essential information needed to evaluate and support this motion was also learned at Mr. Chang's most recent deposition on January 27, as illustrated in the discussion below.  In any event, courts in the Ninth Circuit generally consider spoliation motions timely so long as they are filed before the close of discovery, and have often allowed spoliation motions to be filed within a reasonable period after the close of discovery.  *See Wine Educ. Council v. Arizona Rangers*, No. 19-cv-02235 (PHX) (SMB), 2021 WL 3550213, at *2 (D. Ariz. Aug. 11, 2021) (collecting cases).

develop and market MODS. Chang 1/6/22 Dep. 57:6-17, 58:13-16.[2] Mr. Chang testified that he personally communicated with Kristina and others from her company regarding the development of the MODS Exhibits in part through a messaging service called Telegram. *Id.* at 88:17-89:1; Chang 1/7/22 Dep. 168:9-22 (Ex. 3 to Sholder Decl.). In addition, Kristina and Mr. Chang communicated extensively with the "China design team" (which teamLab understands to include personnel from Dahooo China and their independent contractors) as the MODS Exhibits were being developed using a different messaging service called WeChat. *Id.* at 203:3-17 ("All communications with the design team [were] through WeChat."); Chang 1/27/22 Dep. 227:15-17 (Ex. 4 to Sholder Decl.); *see also, e.g.*, Chang 1/6/22 Dep. 83:16-84:4 (the design team "closely worked with Kristina").[3]

Among other things, Mr. Chang testified that Kristina sent the China design team pictures of prior immersive art exhibits by nonparty artist Yayoi Kusama so that the team could be "inspired" by them. *Id.* at 98:22-99:17, 104:7-22 ("Kristina sent some of the images of Yayoi Kusama's design works to the design team. Hopefully, the design team can be inspired by her design and come up with our own art exhibits."). While Mr. Chang first testified that Kristina had sent him images of teamLab works at the very beginning of their relationship, *id.* at 84:15-22, 108:10-19, Mr. Chang later adamantly maintained that no images of teamLab's artwork were ever sent to the design team while the MODS Exhibits were being developed.[4] Although Mr. Chang acknowledged at his

---

[2] teamLab will be deposing Kristina on February 2, 2022 and will include any additional relevant testimony or information in its reply brief. *See* Dkt. No. 130.

[3] Mr. Chang testified that his role on these communications was generally to serve as interpreter to translate between the China design team and Kristina, but also as a "coordinator" who was free to express his opinions. *See* Chang 1/6/22 Dep. 22:3-5, 89:10-13, 94:6-19, 112:23-113:1, 119:4-21; Chang 1/7/22 Dep. 202:15-203:2.

[4] Mr. Chang testified that he believed the design phase of the infringing exhibits began sometime in 2018, *see* Chang 1/6/22 Dep. 84:15-22, but his testimony was inconsistent with respect to when it ended. While he initially stated he did not recall when the design phase closed, at least in part because of the deleted chat messages, *id.* at 111:11-22, he later became more insistent that the design period ended in late 2018, *see* Chang 1/7/22 Dep. 136:14-15.

deposition that he could not recall the content of all communications between Kristina and the design team (which took place over three years ago), *id.* at 115:4-8, he asserted that it "was impossible" that teamLab was ever mentioned, *id.* at 115:9-15. Mr. Chang purports to have "paid special attention to" and "memorized" this fact "because it is related to copyrights," which are "related to the kind of training I received from my education" and are a "very serious" issue. *Id.* at 115:19-117:2. Mr. Chang further maintained that he "stressed to our design team" to avoid plagiarism and "would have knowledge" if any "reference design" had been used. *Id.* at 115:24-116:4.

None of this can be corroborated, however, because these chat messages have been destroyed.[5] This appears to have occurred beginning around the end of May 2019, when Mr. Chang and Kristina had a falling out and Mr. Chang terminated Defendants' relationship with her. *See, e.g.*, Chang 1/27/22 Dep. 229:10-14. In connection with this, Mr. Chang (1) stopped communicating with Kristina via Telegram and stopped using Telegram altogether; and (2) deleted Kristina from the WeChat group with the China design team and "dismantled" the chat group. Chang 1/6/22 Dep. 88:25-89:9; Chang 1/27/22 Dep. 229:2-230:13, 231:3-23. This collectively had the effect of destroying both the Telegram messages with Kristina and the WeChat group messages with the China design team.[6]

The mechanism through which the messages were destroyed is different as to each chat service. According to Mr. Chang and Defendants' counsel, Mr. Chang's Telegram account "self-destructed" sometime after he stopped using the service toward the end of May 2019. *See, e.g.*, Dec. 16, 2021 Letter from N. Tapert to S. Sholder at 1

---

[5] It is possible that some of the WeChat messages have been maintained by members of the China design team or others at Dahooo China, but Defendants have repeatedly refused to produce documents held by Dahooo China. While Kristina and other third parties, such as website consultant Dmitry Yarchuck, have been able to provide some of the missing messages, the crucial correspondence from 2018 concerning the design of the exhibits and communications with the China design team remain missing.

[6] Neither Telegram nor WeChat maintains its users' chat histories indefinitely on a cloud server.

(Ex. 5 to Sholder Decl.).  Under Telegram's "self-destruction" policy, "[i]f you stop using Telegram and don't come online for at least six months, your account will be deleted along with all messages, media, contacts and every other piece of data you store in the Telegram cloud."  Telegram FAQ re: "How does account self-destruction work?" ("Telegram Self-Destruction FAQ"), https://telegram.org/faq#q-how-does-account-self-destruction-work.[7]  Apparently, when Mr. Chang attempted to log onto Telegram to retrieve his chat history (on an unknown date), he noticed that his account had "self-destructed" and that his chat history was no longer available.  *See, e.g.*, Chang 1/6/22 Dep. 88:25-89:5; Chang 1/27/22 Dep. 229:15-230:13; *see also id.* at 229:15-230:13 (Mr. Chang does "not recall" when he attempted to log back into Telegram).[8]  Mr. Chang never attempted to find out what if any steps were needed to retain Telegram chat history before this.  *Id.* at 230:14-18.

As to WeChat, Mr. Chang claims that after ending Defendants' relationship with Kristina, he removed her from the group chat with the China design team for security reasons and then proceeded to "dismantle" and delete the group chat.  Chang 1/27/22 Dep. 231:3-23; *see also* Chang 1/6/22 Dep. 88:25-89:9.  Once this occurred, according to Mr. Chang, all of the messages between him, Kristina and the China design team "were gone" and "could not be recovered."  Chang 1/27/22 Dep. 231:12-19.  Mr. Chang did not back up the group chat before deleting it because he was not in the "habit" of doing so at the time.  *Id.* at 233:13-17.[9]  Mr. Chang only looked into whether it is

---

[7] A Telegram user "can change the exact period after which your inactive account will self-destruct in Settings."  Telegram Self-Destruction FAQ.

[8] It is clear that Mr. Chang did not attempt to log back onto Telegram to retrieve his chat history when Defendants first implemented a litigation hold in August 2019, *see* Chang 1/27/22 Dep. 225:14-18, since the six-month window for Telegram self-destruction would not have closed by then.

[9] WeChat provides instructions for backing up and recovering chat history on its website.  WeChat Help Center, "How do I backup/restore chat history through WeChat for Windows/Mac?," https://help.wechat.com/cgi-bin/micromsg-bin/oshelpcenter?opcode=2&lang=en&plat=ios&pid=1001146&id=161223jinnij161223qiabin&Channel=helpcenter.

possible to recover WeChat messaging history after Plaintiff requested chat history in discovery. *Id.* at 233:18-23.

Mr. Chang allowed the Telegram chats to be destroyed and deleted the WeChat conversion with the China design team notwithstanding having previously received two cease-and-desist letters, first from counsel for teamLab's agent Pace Gallery and then from teamLab's counsel, on February 7, 2019 and April 22, 2019, respectively. Feb. 7, 2019 Letter from N. Glanc to J. Chang ("February 2019 Letter") (Ex. 6 to Sholder Decl.); MODS016644, Apr. 22, 2019 Letter from S. Sholder to J. Griem ("April 2019 Letter") (Ex. 7 to Sholder Decl.). The February 2019 Letter was sent after MODS published copyrighted images of teamLab's artwork on MODS' website to promote the opening of the MODS Museum. Feb. 2019 Letter at 1. The letter warned that if MODS did not cease and desist from displaying those images, teamLab would "promptly file a complaint against MODS seeking immediate injunctive relief, in addition to compensatory, statutory and punitive damages, attorneys' fees and costs." *Id.* at 2.

The April 2019 Letter again addressed the use of infringing images on MODS' website, and additionally discussed MODS' creation of its own "substantially similar works" of digital art. Apr. 2019 Letter at 1 ("We are informed that MODS has not only copied certain teamLab works in their entireties but has also created its own substantially similar works and images and videos thereof by copying copyrightable expression contained in teamLab's works."). This letter demanded, *inter alia*, that MODS "removes all of the Infringing Works from any current MODS exhibition and covenants not to exhibit any Infringing Works or other works substantially similar to teamLab's Original Works in any future MODS exhibition." *Id.* at 2. This letter warned that if MODS did not comply, teamLab "would be entitled to recover monetary damages in a copyright infringement suit against MODS as well as injunctive relief preventing MODS from using any of the Infringing Works or derivatives thereof in any way, including in its museum exhibitions." *Id.*; *see also id.* at 3 ("Should MODS fail to

comply with the above requests teamLab will have no choice but to consider all available legal options to enforce its intellectual property rights against the actual infringement by MODS to date and further infringement in the future.").

Notwithstanding these cease-and-desist letters, Defendants did not institute a litigation hold until approximately August 2019 – more than five months after receiving the first letter.  Chang 1/27/22 Dep. 225:14-18.  Mr. Chang personally drafted the litigation hold and claims that he instructed his employees to "retain all documents, documents related to the case and documents not related to the case." *Id.* at 226:16-18. This effort evidently did not result in the retention of either the Telegram or WeChat messages discussed herein.[10]

Counsel for Plaintiff initially emailed counsel for Defendants on December 14, 2021 to address the missing chat messages, and subsequently held a telephonic meet-and-confer session on January 25, 2022 to discuss the matter once Mr. Chang had provided some initial deposition testimony on this issue.  *See* Sholder Decl. ¶ 10. Counsel for Plaintiff gave counsel for Defendants the opportunity to seek the missing chat records from elsewhere, including from Dahooo China, in order to avoid motion practice, but Defendants remained adamant, as they had earlier in the case, that they were under no obligation to produce or collect documents from their parent company (even though they had done so in connection with early settlement discussions and mediation).  As a result, counsel for Plaintiff sought to gather further information from Mr. Chang at his final deposition session on January 27, 2022, and Plaintiff now files this motion for spoliation sanctions.

## **ARGUMENT**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or reasonably foreseeable litigation." *Jerry Beeman & Pharmacy Servs., Inc. v. Caremark Inc.*, 322 F. Supp. 3d

---

[10] Ultimately, Defendants have not produced any documents from the year 2018.

1027, 1034 (C.D. Cal. 2018) (Phillips, J.) (citations and internal quotations omitted). "The court's authority to sanction a party for despoiling evidence derives from two sources: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Fed. R. Civ. P. 37 against a party who 'fails to obey an order to provide or permit discovery.'" *Id.* (citations and some internal quotations omitted).

An adverse inference instruction is one of several sanctions that can be imposed for spoliation. *See, e.g.*, *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993) ("Short of excluding the disputed evidence, a trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior.") (citation omitted); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) ("Evidence of spoliation may be grounds for sanctions, which may include an adverse inference instruction.") (citation omitted); *see generally, e.g.*, *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008) ("Courts have developed three types of sanctions for destruction of evidence," including "instruct[ing] the jury that it may infer that evidence made unavailable by a party was unfavorable to that party," as well precluding testimony regarding the spoliated evidence and termination sanctions).

Courts in the Ninth Circuit apply a three-part test to determine whether an adverse inference instruction is appropriate when there has been spoliation. Specifically, the party seeking the sanction must establish: "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *E.g.*, *Apple*, 888 F. Supp. 2d at 989-90 (citation omitted). These requirements are easily satisfied here for the following reasons.

# I.   **DEFENDANTS HAD AN OBLIGATION TO RETAIN THE CHAT MESSAGES AT THE TIME THEY WERE DESTROYED.**

There is no question that Defendants had an obligation to preserve the Telegram and WeChat messages at the time these messages were destroyed or allowed to be destroyed.  "The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation.'"  *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. 14-cv-1926 (JAK) (SPX), 2016 WL 6609208, at *10 (C.D. Cal. July 12, 2016), *report and recommendation adopted*, No. 14-cv-01926 (JAK) (SPX), 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (citation omitted); *see also, e.g.*, *Apple*, 888 F. Supp. 2d at 990 ("there is no question that the duty to preserve relevant evidence may arise even before litigation is formally commenced").  Ninth Circuit courts "generally agree that, 'as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'"  *Id.* at 991 (citations omitted).  Here, Defendants were on notice of a need to preserve the Telegram and WeChat messages well before the end of May 2019, when Mr. Chang terminated Defendants' relationship with Kristina and should have taken steps to preserve all of the chat messages with her and the China design team, for the following reasons.

***First***, multiple cease-and-desist letters made this litigation reasonably foreseeable well before the end of May 2019, when Mr. Chang took the steps discussed above that resulted in the destruction of the Telegram and WeChat messages.  Courts have routinely found that receiving a cease-and-desist letter puts a party on notice of anticipated litigation.  *See, e.g.*, *Blumenthal*, 2016 WL 6609208, at *10 (two cease-and-desist letters "were certainly sufficient to cause OS to anticipate litigation, and to trigger OS's duty to preserve relevant documents"); *Jackson Fam. Wines, Inc. v. Diageo N. Am., Inc.*, No. 11-cv-5639 (EMC) (JSC), 2014 WL 595912, at *4 (N.D. Cal. Feb. 14, 2014) (duty to preserve arose "as early as the August 31, 2011 cease and desist letter");

*Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 430 (S.D.N.Y. 2009) ("Where copyright infringement is alleged, and a cease and desist letter issues, such a letter triggers the duty to preserve evidence, even prior to the filing of litigation.").

Here, as explained above, Defendants received cease-and-desist letters on February 7, 2019 and April 22, 2019, both of which threatened litigation if MODS did not cease and desist from infringing teamLab's copyrights.  While the February 2019 Letter concerned the use of infringing images of teamLab's works on MODS' website rather than the creation of the MODS Exhibits per se, it discussed copyright infringement generally and addressed the opening of the MODS Museum.  *See* Feb. 2019 Letter at 1.  And regardless of the February 2019 Letter, the April 2019 Letter definitively addressed MODS' creation and potential display of the MODS Exhibits, demanding among other things that MODS "covenants not to exhibit any Infringing Works or other works substantially similar to teamLab's Original Works in any future MODS exhibition."  Apr. 2019 Letter at 1-2.  This letter was also sent to Defendants' counsel in this case, who could have informed Defendants of their document retention obligations if they did not already understand them.  *See id.* at 1; *see also* MODS008119 (Ex. 8 to Sholder Decl.) (February 24, 2019 email from Mr. Chang showing that he had been in contact with his attorney regarding the February 2019 Letter).[11]

In short, the February 2019 Letter made copyright infringement litigation with teamLab reasonably foreseeable, the April 2019 Letter made copyright infringement litigation specifically over the MODS Exhibits reasonably foreseeable (if it had not been already), and the combination of the two letters made the likelihood of copyright

---

[11] A cease-and-desist letter does not need to ask the recipient to preserve documents in order to trigger a duty to preserve. *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-cv-9363 (ALC) (DF), 2018 WL 1512055, at *10 (S.D.N.Y. Mar. 12, 2018) ("Defendants' argument that the Cease-and-Desist Letter did not itself 'demand that they preserve any documents' is also unavailing.  Had Defendants consulted an attorney on receipt of the Cease-and-Desist Letter, they would have been apprised of their preservation obligation, which 'runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.'") (citations omitted).

infringement litigation unmistakable.  Given all this, there is no question that MODS was under a duty to preserve relevant communications prior to the end of May 2019.

***Second***, the Telegram and WeChat messages that were destroyed are unquestionably relevant communications that fell within MODS' duty to preserve.  "A litigant 'is under a duty to preserve what it knows, or reasonably should know, is relevant in the action . . . .'" *Arista Records*, 608 F. Supp. 2d at 433 (citation omitted); *see also*, *e.g.*, *Apple*, 888 F. Supp. 2d at 991 ("'[A]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.'") (citation omitted).  As explained herein, Mr. Chang's testimony makes clear that the Telegram and WeChat messages concern the conception, design and development of the MODS Exhibits, and as such implicate both the issues of access and substantial similarity.  The cease-and-desist letters that Defendants received made clear that potential copyright infringement litigation would concern MODS' display of the MODS Exhibits at the MODS museum, and were more than enough to put a reasonable party on notice that communications regarding the creation and development of the exhibits were relevant and needed to be preserved.

For these reasons, Defendants were aware of the need to preserve the Telegram and WeChat messages at the time they were destroyed or allowed to be destroyed around the end of May 2019.

## II.   DEFENDANTS DESTROYED OR ALLOWED THE CHAT MESSAGES TO BE DESTROYED WITH A "CULPABLE STATE OF MIND."

The Telegram and WeChat messages were also "destroyed 'with a culpable state of mind.'"  *See Apple*, 888 F. Supp. 2d at 989-90 (citation omitted).  The Ninth Circuit has explained that "a finding of 'bad faith' is not a prerequisite to" issuing an adverse inference instruction for spoliation.  *Glover*, 6 F.3d at 1329 (citation omitted).  While "a finding of bad faith will suffice, . . . so will simple notice of 'potential relevance to

the litigation.'" *Id.* (citation omitted).[12]  For the reasons set forth above, Defendants were on notice of the potential relevance of the deleted chat messages to reasonably foreseeable litigation, and thus acted with a culpable state of mind for the purposes of an adverse inference instruction.  Indeed, the fact that Defendants did not institute a litigation hold until August 2019, Chang 1/27/22 Dep. 225:14-18, despite receiving cease-and-desist letters beginning in February 2019, itself indicates culpability – especially given that action or inaction leading to the destruction of Telegram and WeChat messages occurred in the interim.  *See PersonalWeb Techs., LLC v. Google Inc.*, No. 13-cv-01317 (EJD), 2014 WL 5422933, at *3 (N.D. Cal. Oct. 24, 2014) (party's failure to implement a legal until five months after the date on which litigation was foreseeable was "certainly evidence of willfulness or bad faith").[13]

To the extent that Defendants did not understand that deleting Mr. Chang's Telegram account and the WeChat group with Kristina and the China design team would result in the permanent loss of the chat messages (and it is hardly clear that they did not, at least as to the WeChat messages), that fact would be inapposite.  Parties who are on notice of potential litigation and under a duty to preserve relevant materials must "take[] affirmative steps to prevent their destruction when they became aware of their potential relevance."  *Youngevity Int'l v. Smith*, No. 16-cv-704 (BTM) (JLB), 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020).  In other words, the loss of relevant materials due to the ordinary operation of technology "do[es] not justify" the failure to produce them when their destruction "could have been prevented with reasonable proactivity."

---

[12] Indeed, this Court has explained that termination sanctions (such as default judgment) only require a finding of willfulness, defined as when "the party 'has some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Caremark*, 322 F. Supp. 3d at 1035.  It would make no sense for a mental state more culpable than that to be required for the less severe sanction of issuing an adverse inference instruction.

[13] As shown above, the litigation hold Defendants implemented in August 2019 must not have extended to the missing chat messages – or the chat messages were otherwise omitted or ignored – since if Mr. Chang had logged onto Telegram in August 2019 his account still would have been active and his chat history would have been retrievable.

12

*Id.* ("The existence of reasonable explanations for why deletions occurred does not suggest that reasonable steps were taken to prevent deletions.") (citation omitted); *see also, e.g.*, Fed. R. Civ. P. 37, Advisory Committee Notes to the 2006 Amendment ("[A] party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve."); *c.f., e.g.*, *Apple*, 888 F. Supp. 2d at 991 ("Once Samsung's duty to preserve took effect in August 2010, Samsung was 'required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation.'") (citation omitted).

Here, once Defendants were on notice of potential copyright litigation with teamLab, they should have taken affirmative steps to maintain the obviously relevant Telegram and WeChat messages. This would have included researching whether anything needed to be done to preserve Telegram messages after ceasing to use the service. *See* Telegram Self-Destruction FAQ (explaining that Telegram messages are automatically deleted "[i]f you stop using Telegram and don't come online for at least six months" but that "You can change the exact period after which your inactive account will self-destruct in Settings"). This also would have included taking steps to back up the relevant WeChat conversations before deleting the group conversion between Mr. Chang, Kristina and the China design team – or simply not deleting that conversation at all (or at a minimum taking screen shots). Defendants' failure to do any of this, despite being on notice of potential litigation from the cease-and-desist letters, constitutes a failure to satisfy their document preservation obligations.

Finally, while the requirement of a "culpable state of mind" is satisfied for the reasons stated above alone, there is additionally some indication that Mr. Chang intentionally destroyed at least the WeChat messages to prevent their discovery in litigation with teamLab. Mr. Chang testified that his objective after ending Defendants' relationship with Kristina was to remove her from the WeChat group so that she could

no longer access those communications for security reasons.  *See, e.g.*, Chang 1/27/22 Dep. 231:3-23.  It is far from clear why Mr. Chang needed to then take the additional step of "dismantl[ing]" the chat group and deleting all of the chat history – which otherwise would have been stored on his device and could have been backed up.  *See id.* at 231:3-23 (agreeing that removing someone from a WeChat group does not necessarily delete the chat history); *see also id.* at 233:13-17 (Mr. Chang did not back up the group chat before deleting it because he was not in the "habit" of doing so at the time).[14]  While it is impossible to know what Mr. Chang's true intention was based on available evidence, the inherent suspiciousness of Mr. Chang's deletion of the WeChat group should be considered in imposing any sanction.

## III.   THE CHAT MESSAGES ARE RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES.

Finally, there is also no doubt that the Telegram and WeChat messages that were destroyed are "relevant to [a] party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Apple*, 888 F. Supp. 2d at 989-90 (internal quotations and citation omitted).

Initially, the messages are potentially relevant to the issue of Defendants' access to teamLab's digital art exhibits.  As noted above, Defendants have maintained throughout the litigation that they were not aware of and/or lacked access to teamLab's digital artwork when the MODS Exhibits were conceived of and created.  The destroyed chat messages certainly could have helped Plaintiff disprove this contention.[15]

---

[14] Mr. Chang still uses WeChat today.  1/27/22 Chang Dep. 232:20.  While Mr. Chang has changed devices since the time of his group chat with Kristina and the China design team, *see id.* at 231:2-232:11, WeChat allows users to either back up their chat histories or transfer them to a new device, *see* WeChat Help Center, "How long can I save my chat               history?,"      https://help.wechat.com/cgi-bin/micromsg-bin/oshelpcenter?opcode=2&lang=en&plat=ios&pid=1001146&id=1208117b2mai14 1024ervu6v&Channel=helpcenter ("When deleting an app or switching to a new device, be sure to back up or migrate your chat history.").

[15] teamLab does not concede that it cannot prove access without the chat messages, but this does not mean that the deleted messages potentially showing direct access are not relevant and would not have been useful evidence at trial.  Likewise, teamLab does not

Mr. Chang made clear that he discussed the initial conception and development of the MODS Exhibits with Kristina over Telegram, and that he, Kristina and the China design team corresponded extensively over WeChat regarding the design of the MODS Exhibits.  *See, e.g.*, Chang 1/6/22 Dep. 83:16-84:4, 88:17-89:1, 112:23-113:1, 114:10-23.  Mr. Chang also made clear that Kristina sent the China design team images of a different artist's immersive artwork to use as inspiration, which suggests that images of teamLab's artwork could have also been sent.  *Id.* at 98:22-99:17, 104:7-22.  Although Mr. Chang maintained that the deleted chat messages did not mention teamLab or its digital artwork, this self-serving testimony should not be credited absent corroborating evidence (which obviously does not exist due to spoliation).  *See CTC Glob. Corp. v. Huang*, No. 17-cv-02202 (AGK) (ESX), 2019 WL 6357271, at *7 (C.D. Cal. July 3, 2019) (in addressing the deletion of WeChat messages from an iPad, holding that "[c]onsidering the absence of corroborating evidence and the existence of evidence to the contrary, the Court doesn't give great weight to Defendants' testimony that they didn't use the iPad after 2015").[16]

Finally, the deleted chat messages are relevant to broader thematic issues that will be addressed at trial.  Although teamLab can prove its copyright infringement claims by establishing access and substantial similarity alone, and does not need direct proof of copying, the myriad similarities of the exhibits at issue strongly suggest that Defendants in fact set out to copy teamLab when they conceived of and designed exhibits for the MODS Museum.  There may well have been "smoking gun" chat messages reflecting this, ranging from express instructions to the China design team to

---

concede any arguments concerning the appropriate or relevant timing of access in this case.

[16] The court in *Huang* proceeded to find that the deletion of data from the iPad did not warrant spoliation sanctions because the plaintiff failed to show that the relevant materials were not available from another source (the court later imposed an adverse inference instruction for spoliation from a different device).  *See id.* at *7, *9.  That is not the case here.  Indeed, Plaintiff has sought discovery from Dahooo China, the employees or agents of which might still have relevant messages on their devices, but Defendants have refused to provide discovery from Dahooo China.

mimic teamLab to messages that provided examples of teamLab's work for consideration in design.   Any of this material would have been extremely powerful evidence and played a significant role at summary judgment and/or trial if it existed and had been produced – but the destruction of the Telegram and WeChat messages forecloses any possibility of discovering these potentially critical facts.

All of this is to say that while the contents of the missing messages cannot be known because they have been destroyed, there is ample reason to believe that they would have been relevant to the parties' claims and defenses.

*      *      *

For the reasons set forth above, all of the requirements for issuing an adverse inference instruction as a sanction for Defendants' spoliation of the Telegram and WeChat messages are easily satisfied.   The Court should accordingly (1) instruct the jury, at a minimum, that it may infer that the contents of the deleted messages were unfavorable to Defendants; and (2) permit Plaintiff to discuss Defendants' spoliation at trial.   *See, e.g.*, *Huang*, 2019 WL 6357271, at *9 (C.D. Cal. July 3, 2019) (granting similar relief for spoliation that included destruction of WeChat history; "The instruction will inform the jury of Defendants' destruction of USB drives and JASONPC and instruct them that they may presume the data Defendants destroyed was unfavorable to Defendants.").   Plaintiff respectfully requests an opportunity to revisit this issue closer to trial if the Court prefers to address sanctions then.   *See id.* ("Plaintiff may present further argument about the instruction and related details.").   The Court should additionally require Defendants to pay Plaintiff's reasonable costs and attorneys' fees that were incurred with investigating and filing this motion.   *See, e.g.*, *id.* at *9-10 (additionally awarding monetary sanction).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should issue an adverse inference instruction, permit Plaintiff to discuss Defendants' spoliation at trial and award any other relief it deems appropriate.

Dated:  January 31, 2022

**COWAN DeBAETS ABRAHAMS & SHEPPARD, LLP**

By:  /s/ Scott J. Sholder
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*

*Attorneys for Plaintiff* teamLab Inc.

17