Nancy E. Wolff, Esq., No. 133334
nwolff@cdas.com
COWAN, DeBAETS, ABRAHAMS,
& SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394
NWolff@cdas.com

*Attorneys for Plaintiff*
TEAMLAB INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMLAB INC., a Japanese corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MUSEUM OF DREAM SPACE, LLC, a California limited liability company, and DAHOOO AMERICAN CORPORATION, an Illinois corporation,<br><br>Defendants. | Case No.: 2:19-cv-06906-VAP-GJS<br><br>**PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF DEFENDANTS' EXPERT DR. KIMBERLY CONNERTON**<br><br>(F.R. Evid. 702)<br><br>Filed concurrently with the Declaration of Benjamin S. Halperin<br><br>Date: April 11, 2022<br>Time: 2:00 p.m.<br>Crtrm: 8A<br>Trial Date: June 13, 2022<br><br>Judge: Hon. Virginia A. Phillips |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 11, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Virginia A. Phillips, in the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, plaintiff teamLab Inc. ("teamLab") will bring a motion to exclude the expert opinions of Dr. Kimberly Connerton.

NOTICE IS FURTHER GIVEN that this motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 7, 2022.

teamLab's motion is based on this Notice of Motion, supporting Memorandum of Points and Authorities, Federal Rule of Evidence 702, the Court's Standing Order, the Court file, and any arguments made at the hearing should the Court deem a hearing to be necessary.

Dated: March 14, 2022

**COWAN DeBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Benjamin S. Halperin
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*

*Attorneys for Plaintiff,* teamLab Inc.

Plaintiff teamLab Inc. ("TL") and Defendants Museum of Dream Space LLC ("MODS") and Dahooo American Corp. retained expert witnesses on the issue of whether certain of the parties' digital immersive art exhibits are extrinsically substantially similar. Defendants' expert Dr. Kimberly Connerton purports to have conducted such an extrinsic substantial similarity analysis and found that the exhibits are different. But Dr. Connerton did not apply the correct legal standard for this analysis, since in her words, "substantial similarity" means whether the works she was comparing were "exact copies," and what she looked for to find copying was "an actual depiction of sameness in every way, shape, and form." In other words, Dr. Connerton's opinions address whether TL and MODS' exhibits are perfectly identical, not whether they are substantially similar. Because this is not the applicable standard for substantial similarity, these opinions are unreliable, irrelevant, and unhelpful to the factfinder, and should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Dr. Connerton's opinions should additionally be excluded because she claims that she lacked sufficient information about TL's exhibits to adequately compare them to MODS' exhibits (including floor plans and schematics), but admits that she failed to review these materials once TL provided them.[1]

## BACKGROUND

Dr. Connerton, an adjunct art professor, is Defendants' expert on the issue of whether MODS' exhibits *Season Dream* ("*Season*") and *Galaxy Dream* ("*Galaxy*") (collectively, the "MODS Exhibits") are substantially similar to TL's exhibits *Transcending Boundaries* ("*Boundaries*") and *Crystal Universe* ("*Crystal*") (collectively, the "TL Exhibits"). She has never previously analyzed substantial

---

[1] The parties met and conferred on March 7, 2022 and were unable to reach an agreement on this motion. The scheduling order in this case does not discuss *Daubert* briefing or provide deadlines for it. TL files this motion concurrently with its motion for summary judgment because it may affect whether the Court grants summary judgment on the issue of extrinsic similarity (although TL believes summary judgment is warranted on that issue regardless of the outcome of this motion for the reasons discussed in its motion for summary judgment).

1  similarity of artwork, in a lawsuit or otherwise. *See, e.g.*, Connerton Dep. 14:23-25 (Ex.
2  A to 3/14/22 Decl. of Benjamin Halperin ("Halperin Decl.")). She provided three expert
3  reports: (1) an opening report dated June 30, 2021 ("Connerton Rep"; Ex. B to Halperin
4  Decl.); (2) a rebuttal report dated August 5, 2021 (Ex. C to Halperin Decl.); and a
5  "supplemental" report dated December 28, 2021 that has now been excluded [Dkt. No.
6  147]. In these reports, Dr. Connerton generally opines that *Season* is not substantially
7  similar to *Boundaries* and *Galaxy* is not substantially similar to *Crystal*. In so doing,
8  Dr. Connerton purports to "extrinsically analyze" the issue of substantial similarity,
9  which she describes in her reports as "assess[ing] the similarities of the two works,
10 focusing only on the protectible elements of the plaintiff's expression." Connerton Rep.
11 at 3, 7.

12      Dr. Connerton was asked at her deposition to describe the methodology she used
13 to apply the extrinsic similarity analysis in this case. She explained that she looked at
14 videos and photos of the TL and MODS Exhibits and attempted to identify "objective
15 differences" between them, emphasizing that she viewed her task as "really" focusing
16 on "differences" rather than similarities. *Id.* 49:4-23, 49:24-50:16. Dr. Connerton then
17 explained that her analysis entailed "distinguishing between and understanding the
18 concepts of substantially similar and objective differences." *Id.* 54:2-8. In response to
19 this, Dr. Connerton was asked "What do you understand as substantially similar?"; she
20 replied, "If they're exact copies." *Id.* 54:9-11. This echoed a statement Dr. Connerton
21 had made at the beginning of her deposition, when she testified that her understanding
22 of the term "copying" as applied "in this case" is "an actual depiction of sameness in
23 every way, shape, and form." *Id.* 15:19-16:14. Dr. Connerton did not attempt to clarify
24 or correct her description of her understanding of substantial similarity and copying,
25 including on redirect examination, when she merely reiterated that her approach broadly
26 entailed looking for similarities and differences based on the allegations in TL's
27 Complaint. *See id.* 179:4-180:4.

28      Dr. Connerton additionally claims that "it is difficult to understand all the

2
Plaintiff's Motion To Exclude The Opinions Of Dr. Kimberly Connerton

objective differences between the teamLab and MODS exhibits" because "the teamLab files that were given to me to examine were ambiguous" and did not include detailed information on the exhibits' measurements and specifications. Connerton Rep. at 4; Connerton Dep. 77:10-78:7 (similar statement, alleging "incomplete" documentation that was missing, *inter alia*, "floor plans" and "measurements of each installation"); *id.* 177:3-179:3 (questioning on redirect examination establishing multiple categories of materials that could "have helped" Dr. Connerton). However, Dr. Connerton admits that she was not provided with, and did not review, any of the approximately 25,000 additional documents TL produced between October 2021 and December 2021 (after the deadline for expert disclosures[2] but while discovery was ongoing), which included over 2,700 additional image and video files, as well as schematics and dimensions of TL's exhibits. *See id.* 76:12-79:5 (Dr. Connerton not aware of multiple categories of additional production); *see* Halperin Decl. ¶¶ 7-9. Although Dr. Connerton said she was aware that additional materials were produced, she "only reviewed the material [she] was actually given," which is what is "listed in [her opening and rebuttal] reports." *Id.* 76:12-77:5. Having not received or reviewed the additional materials, Dr. Connerton did not discuss any of them in the supplemental report she later submitted on December 28, 2021, weeks after the last production of these materials. She admits that the additional materials would have been "helpful" for her analysis. *Id.* 77:10-78:25, 177:3-179:3.

## ARGUMENT

Expert testimony must be "relevant and reliable" to be admissible under Federal Rule of Evidence 702 and *Daubert*. *E.g.*, *Lanard Toys Ltd. v. Anker Play Prod., LLC*, 2020 WL 6873647, at *3 (C.D. Cal. Nov. 12, 2020). "Expert testimony must be the product of: (1) sufficient facts or data, (2) reliable principles and methods, and (3) the reliable application of those principles and methods to the facts of the case." *Id.* at *3

---

[2] The deadline for expert disclosures was July 1, 2021, and the deadline for rebuttal expert disclosures was August 5, 2021.

(citing Fed. R. Evid. 702).

## I.  DR. CONNERTON APPLIED THE WRONG LEGAL STANDARD FOR THE EXTRINSIC SIMILARITY ANALYSIS.

"Expert testimony … should be excluded when it applies the wrong legal standard," *Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018), since expert opinions based on an incorrect legal standard are unreliable, irrelevant, and unhelpful, *Lanard*, 2020 WL 6873647, at *3; *Johannsongs-Publ'g Ltd. v. Lovland*, 2020 WL 2315805, at *7 (C.D. Cal. Apr. 3, 2020), *aff'd*, 2021 WL 5564626 (9th Cir. Nov. 29, 2021).

Dr. Connerton applied the wrong legal standard here because her analysis required the TL and MODS Exhibits to be identical, not substantially similar. Dr. Connerton first made this clear at her deposition when she was asked how she defines the term "copying." She answered: "Anyway, in this case it's an ***actual depiction of sameness in every way, shape, and form***. That's how I understand 'copy.'" Connerton Dep. 15:19-16:14 (emphasis added). Later, Dr. Connerton was given an opportunity to clarify that answer, when TL's counsel directly asked her what she understood "substantial similar" to mean. Dr. Connerton doubled down, stating that it means "[i]f they're ***exact copies***." *Id.* 54:9-11 (emphasis added).

Requiring "sameness in every way, shape, and form" and for there to be "exact copies" is the incorrect legal standard for extrinsic substantial similarity in copyright infringement cases in this Circuit. As is clear from its name, the extrinsic substantial similarity analysis considers whether two works share "objective ***similarities***," not whether they are identical. *See, e.g.*, *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (emphasis added). Indeed, courts have repeatedly made clear that "substantial similarity" is not the same thing as "perfect identity," and that the former is sufficient to prove copyright infringement. *E.g.*, *Teller v. Dogge*, 8 F. Supp. 3d 1228, 1236 (D. Nev. 2014) ("[A] copyright infringement claim requires 'substantial similarity' instead of perfect identity between two works.");

1  *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511 (7th Cir. 1994) ("The
2  [Copyright] Act does not require identical copying, only substantial similarity."); *Ty,*
3  *Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 941–42 (N.D. Ill.), *aff'd*, 132 F.3d
4  1167 (7th Cir. 1997) ("Infringement does not require that the two works be identical;
5  rather, it requires only substantial similarity.").

6        Dr. Connerton's application of an incorrect legal standard requiring perfect
7  identity rather than substantial similarity makes her opinions unreliable, irrelevant,
8  unhelpful, and inadmissible. *See, e.g.*, *Lanard*, 2020 WL 6873647, at *6 (excluding
9  expert who "applied an incorrect legal standard" to extrinsic similarity, resulting in a
10 "comparison … [that] would not be helpful to and would only serve to confuse the
11 jury"); *Johannsongs*, 2020 WL 2315805, at *7 (expert "fail[ed] to properly apply the
12 extrinsic test, rendering the Reports unreliable, unhelpful, and inadmissible";
13 proceeding to grant summary judgment to the movant on similarity); *Smallwood,*
14 *Reynolds, Stewart, Stewart & Assocs., Inc. v. Preston P'ship, LLC*, 2008 WL 11337788,
15 at *2 (N.D. Ga. Feb. 27, 2008) (excluding expert who applied a "legally untenable"
16 standard when assessing whether work was sufficiently original for copyright
17 protection); *KB Home v. Antares Homes, Ltd.*, 2007 WL 1893370, at *10 (N.D. Tex.
18 June 28, 2007) (agreeing that "testimony that relies on an incorrect legal standard would
19 'confuse and mislead the jury'" and finding that expert incorrectly "require[d] direct
20 proof of copying" when only "an inference of copying" was sufficient to establish
21 infringement, but deeming the issue moot in light of previous order limiting the expert's
22 testimony). This is especially so because the incorrect requirement of perfect identity
23 rather than substantial similarity "goes to the heart of [Dr. Connerton's] opinion[s], i.e.,
24 that there was no copyright infringement in this case." *Smallwood*, 2008 WL 11337788,
25 at *2.

26       The problems with Dr. Connerton's approach amount to more than a poor choice
27 of words at her deposition. For one thing, Dr. Connerton described her analysis as
28 requiring identical copying multiple times rather than just once. *See* Connerton Dep.

15:19-16:14, 54:9-11. While a misstatement one time might be understandable and therefore unremarkable, Dr. Connerton was given multiple opportunities to explain the framework for her analysis—including being directly asked what "substantially similar" meant—and described her approach as requiring identical copying each time. *See id.* She also never clarified or walked this back at her deposition, including when asked questions by Defendants' counsel on redirect. In short, while there is not a large volume of testimony about how Dr. Connerton understood the concept of substantial similarity when conducting her analysis, the testimony is not ambiguous either.

Dr. Connerton's incorrect understanding of substantial similarity is also not merely an academic or theoretical problem with her methodology, since the substance of Dr. Connerton's analysis indicates that she really did consider elements of the TL and MODS Exhibits substantially similar only if they were identical. This is directly on display in her opening expert report where she, for example, points to several minor differences between *Season* and *Boundaries*—such as depicting "different types of flowers" and different seasons—while ignoring more obvious similarities such as the fact that both exhibits depict seasons while displaying digitized water as thin lines of light intertwined with two-dimensional animated flowers. Connerton Rep. at 5; *see also* Paul Rep. at 22-25 (Ex. D to Halperin Decl.) (explaining the similarities); Paul Rebuttal Rep. at 5 (Ex. E to Halperin Decl.) (explaining how Dr. Connerton's identification of "granular differences" does not refute substantial similarity); *accord, e.g.*, *Teller*, 8 F. Supp. 3d at 1236 ("differences in minor details of … two works" are inapposite for copyright infringement, which does not require "perfect identity between two works"). This is consistent with what Dr. Connerton believes she "was hired to" do, which was "look at why these works are different" rather than objectively consider similarities and differences to determine if extrinsic substantial similarity, as understood in this Circuit, exists. *See* Connerton Dep. 49:24-50:16 ("I was hired to really look at … why these works are different").

All of this shows that Dr. Connerton meant what she said at her deposition—that

when analyzing substantial similarity, she was really looking only for identical copying. This incorrect and overly stringent analysis will not help the Court rule on extrinsic similarity at summary judgment, and it would confuse the jury if it were allowed at trial. Dr. Connerton's expert opinions should accordingly be excluded.

## II. DR. CONNERTON FAILED TO REVIEW AVAILABLE MATERIALS THAT SHE CLAIMS SHE NEEDED.

Dr. Connerton's opinions should additionally be excluded because she asserts that she lacked the information needed to adequately compare the TL and MODS Exhibits but admits that she never received or reviewed the voluminous additional discovery that TL later produced. *See* Connerton Dep. 76:12-79:5, 177:3-179:3; Connerton Rep. at 4. Most notably, Dr. Connerton argues that she needed floor plans, schematics, and the dimensions of the TL Exhibits to adequately judge them, *id.*; Connerton Dep. 77:13-78:7, 177:3-179:3—when these precise materials were included in the additional production (in addition to thousands of additional video and image files), *see* Halperin Decl. ¶ 10. Dr. Connerton concedes these materials would have been "helpful" for her analysis. Connerton Dep. 77:10-78:25, 177:3-179:3. While these additional materials were produced after Dr. Connerton's initial report and rebuttal, they were produced well in advance of the end of the discovery period (and without objection by Defendants). Yet remarkably, Dr. Connerton submitted a supplemental expert report after all of these materials were produced and did not use that as an opportunity to review or provide opinions about them. *See* Dkt. No. 147 (excluding the supplemental report because it only discussed previously available information and not newly available information).

While it is unclear why Dr. Connerton was never provided with and did not review the additional materials TL properly produced during discovery, the rub is that she did not consider the data and materials she herself had claimed she needed to adequately conduct her extrinsic similarity analysis. Her opinions should accordingly be excluded as not based on sufficient facts or data in light of her failure to remedy the

7

supposed handicap she claims she had despite adequate opportunity to do so. *See, e.g.*, *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 299 (D.D.C. 2018) (excluding expert whose opinions were based on "insufficient facts and data" where he admitted that reviewing certain agreements would have impacted his opinions but "did not review those agreements prior to forming his opinions"); *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 834 (C.D. Cal. 2010) (expert's opinion was "not based on sufficient facts or data" where she failed to "consider[] any data on … pricing, sales volume, or market share" and thus "simply cannot make a reliable analysis as to market impact"); *Herrera v. Eli Lilly & Co.*, 2015 WL 12743696, at *5 (C.D. Cal. July 31, 2015) (excluding medical causation expert who did not interview patient or review sufficient records to support his opinion).

## CONCLUSION

For the reasons set forth above, the Court should exclude the expert opinions of Dr. Kimberly Connerton.

Dated: March 14, 2022

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By: /s/ Benjamin S. Halperin
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*

*Attorneys for Plaintiff* teamLab Inc.