Nancy E. Wolff, Esq., No. 133334
nwolff@cdas.com
COWAN, DEBAETS, ABRAHAMS,
& SHEPPARD LLP
9454 Wilshire Boulevard, Suite 901
Beverly Hills, CA 90212
Telephone: (310) 492-4392
Telefax: (310) 492-4394
NWolff@cdas.com

*Attorneys for Plaintiff*
TEAMLAB INC.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEAMLAB INC., a Japanese corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>MUSEUM OF DREAM SPACE, LLC, a California limited liability company, and DAHOOO AMERICAN CORPORATION, an Illinois corporation,<br><br>                    Defendants. | Case No.:  2:19-cv-06906-PSG-GJS<br><br>**PLAINTIFF'S MOTION FOR RECONSIDERATION AND RELIEF FROM SUMMARY JUDGMENT**<br><br>(F.R.C.P. 59, 60; L.R. 7-18)<br><br>Filed concurrently with the Declaration of Yasuhito Hirowatari<br><br>Date: August 26, 2022<br>Time: 1:30 p.m.<br>Crtrm: 6A<br><br>Judge: Hon. Phillip S. Gutierrez |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 26, 2022 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Phillip S. Gutierrez, in the above-entitled court, located at 350 West 1st Street, Los Angeles, California 90012, plaintiff teamLab Inc. ("teamLab") will bring a motion for reconsideration.

NOTICE IS FURTHER GIVEN that this motion is made following the conference of counsel pursuant to L.R. 7-3 which took place between July 19, 2022 and July 21, 2022 via e-mail and telephone.

teamLab's motion is based on this Notice of Motion, supporting Memorandum of Points and Authorities, Declaration of Yasuhito Hirowatari, Federal Rule of Civil Procedure 56, 59, 60, Local Rule 7-18, the Court's Standing Order, the Court file, and any arguments made at the hearing should the Court deem a hearing to be necessary.

Dated:  July 26, 2022

**COWAN DeBAETS ABRAHAMS**
**& SHEPPARD, LLP**

By:  /s/ Scott J. Sholder
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*
CeCe M. Cole, Esq. *pro hac vice*
Elizabeth Safran, Esq., *pro hac vice*

*Attorneys for Plaintiff,* teamLab Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND ............................................................................................ 3

ARGUMENT ................................................................................................. 5

I.  RELIEF FROM THE ORDER IS WARRANTED UNDER RULE 59 AND/OR
    60 BECAUSE TL DID NOT RECEIVE NOTICE AND A REASONABLE
    OPPORTUNITY TO RESPOND TO THE COURT'S *SUA SPONTE*
    PUBLICATION THEORY. ........................................................................ 6

    A.  Defendants' Opposition Brief Did Not Provide "Ample Notice" Of A Need
        To Address A Publication Theory That Was Never Previously Raised. ... 8

        1.  Defendants Never Raised The Theory Of Publication The Court
            Relied On. ................................................................................. 8

        2.  Defendants' Authority And Arguments Did Not Provide "Ample
            Notice" Of A Need To Describe The Particulars Of First Publication
            Or Refute All Possible Publication Theories. ............................... 11

    B.  A Reply Brief Was Not A Reasonable Opportunity To Respond. .......... 16

    C.  The Evidence TL Would Have Submitted Had It Received Notice And A
        Reasonable Opportunity To Respond Would Have At A Minimum Created
        A Material Factual Dispute Foreclosing Summary Judgment. ............... 18

II. A REASONABLE JURY COULD HAVE FOUND BASED ON THE
    SUMMARY JUDGMENT RECORD THAT TEAMLAB'S EXHIBITS AND
    IMAGES ARE NOT UNITED STATES WORKS. ....................................... 21

    A.  TL Exhibits ................................................................................... 21

    B.  TL Images .................................................................................... 23

CONCLUSION ............................................................................................. 24

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Albino v. Baca*,
   747 F.3d 1162 (9th Cir. 2014)......................................................................7, 8

*Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*,
   273 F.3d 1229 (9th Cir. 2001).......................................................................14

*Atari Interactive, Inc. v. Hyperkin Inc.*,
   2020 WL 4287584 (C.D. Cal. 2020)...........................................................14

*Biocell Tech. LLC v. Arthro-7*,
   2013 WL 12063914 (C.D. Cal. May 22, 2013) ..........................................11

*Brooks v. Tarsadia Hotels*,
   2020 WL 601643 (S.D. Cal. Feb. 7, 2020) ...................................................5

*Casa Dimitri Corp. v. Invicta Watch Co. of Am.*,
   270 F. Supp. 3d 1340 (S.D. Fla. 2017) .......................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .....................................................................................12

*Cool Fuel, Inc. v. Connett*,
   685 F.2d 309 (9th Cir. 1982) .........................................................................7

*DigitAlb, Sh.a v. Setplex, LLC*,
   284 F. Supp. 3d 547 (S.D.N.Y. 2018) ........................................................14

*Donald v. Harrington*,
   243 F.3d 547 (9th Cir. 2000)..................................................................11, 21

*Elkins v. U.S.*,
   364 U.S. 206 (1960) .....................................................................................14

*Foremost in Packaging Sys. v. Cold Chain Techs.*,
   2006 WL 8434861 (C.D. Cal. Apr. 6, 2006)...............................................17

*Franklin v. Dudley*,
   2011 WL 2493770 (E.D. Cal. June 22, 2011) ............................................19

*Fuller v. City of Oakland*,
   47 F.3d 1522 (9th Cir. 1995)..........................................................................7

*Henry v. Gill Indus., Inc.*,
   983 F.2d 943 (9th Cir. 1993).......................................................................12

*In re Roger*,
   2018 WL 1779336 (C.D. Cal. Apr. 12, 2018).............................................13

*Kernel Records Oy v. Mosley*,
   694 F.3d 1294 (11th Cir. 2012).......................................................13, 15, 16

*Khan v. Seton,*
   2022 WL 2235845 ............................................................................................. 6
*KST Data, Inc. v. DXC Tech. Co.,*
   980 F.3d 709 (9th Cir. 2020) ............................................................................ 6
*Lujan v. Nat'l Wildlife Fed'n,*
   497 U.S. 871 (1990) ......................................................................................... 17
*Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.,*
   2017 WL 2929376 (C.D. Cal. May 12, 2017) ................................................ 14
*MB Fin. Grp., Inc. v. U.S. Postal Serv.,*
   545 F.3d 814 (9th Cir. 2008) .......................................................................... 11
*MGA Ent. v. Hartford Ins. Grp.,*
   2012 WL 12895375 (C.D. Cal. Apr. 30, 2012) ............................................... 7
*Moriarty v. Am. Gen. Life Ins. Co.,*
   2018 WL 4331999 (S.D. Cal. Sept. 11, 2018) ............................................... 14
*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,*
   875 F.3d 107 (2d Cir. 2017) ........................................................................... 13
*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ........................................................... 11, 12, 16
*Ritchie v. Nat'l Football League,*
    ss2015 WL 1809203 (D. Haw. Apr. 20, 2015) ............................................ 19
*Roth v. BASF Corp.,*
   No. C07-106MJP, 2008 WL 2148803 (W.D. Wash. May 21, 2008) ...................... 17
*Sawyer v. U.S.,*
   831 F.2d 755 (7th Cir. 1987) .......................................................................... 21
*School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.,*
   5 F.3d 1255 (9th Cir. 1993) .............................................................................. 5
*Swift Harvest USA, LLC v. Boley Int'l HK Ltd,*
   2020 WL 7380148 (C.D. Cal. Sept. 22, 2020) .............................................. 15
*Tripati v. Henman,*
   845 F.2d 205 (9th Cir. 1988) ............................................................................ 5
*U.S. ex rel. Giles v. Sardie,*
   191 F. Supp. 2d 1117 (C.D. Cal. 2000) .......................................................... 17
*U.S. v. Martinez-Leon,*
   565 F. Supp. 2d 1131 (C.D. Cal. 2008) .......................................................... 17
*UAB "Planner 5D" v. Fac*ebook, Inc.,
   2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ............................................... 15
*Villapando v. Banamex USA Bancorp,*
   2020 WL 1942783 (C.D. Cal. Apr. 21, 2020) ...................................... 7, 16, 17
*Walsh v. Tehachapi Unified Sch. Dist.,*
   997 F. Supp. 2d 1071 (E.D. Cal. 2014) .......................................................... 16

*Watanabe v. Home Depot USA, Inc.*,
2003 WL 24272634 (C.D. Cal. Aug. 26, 2003) ...................................... 5, 6, 8
*White v. Kimmell*,
193 F.2d 744 (9th Cir. 1952) ........................................................ 20
*YS Garments v. Cont'l Cas. Co*,
828 F. App'x 354 (9th Cir. 2020) ............................................ 7, 8, 10, 16
*Zimmerman v. City of Oakland*,
255 F.3d 734 (9th Cir. 2001) ........................................................... 5

Rules

Fed. R. Civ. P 59 .............................................................. *passim*
Fed. R. Civ. P. 56 ............................................................. *passim*
Fed. R. Civ. P. 60 ............................................................. *passim*
C.D. Cal. L.R. 56-1 .................................................................... 17
C.D. Cal. L.R. 56-2 .................................................................... 17

Other Authorities

Brief of the Copyright Alliance as Amicus Curiae in Support of Petitioner,
*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
2021 WL 3598247 (U.S.) ............................................................ 10

Melville B. Nimmer and David Nimmer, 2 *Nimmer on Copyright*, § 7.16 ................ 14

U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*, § 1906 (3d
ed. 2021) ........................................................................... *passim*

U.S. Copyright Office, Notification of Inquiry,
84 Fed. Reg. 66,328 (Dec. 4, 2019) ..................................................... 10

## **PRELIMINARY STATEMENT**

Plaintiff teamLab Inc. ("TL") is an art collective, established under Japanese law and based in Tokyo, Japan. TL employs many artists, designers, computer scientists, and engineers in Japan to create large-scale digital artworks that use interactive displays. On July 12, 2022, the Court issued an Order granting Defendants summary judgment (the "Order") on the ground that TL failed to sufficiently prove that its works are exempt from Section 411(a)'s copyright registration requirement. TL respectfully seeks reconsideration of the Order pursuant to Local Rule 7-18, as well as relief from the Order and judgment under Federal Rules of Civil Procedure 59 and 60.[1] Relief from the Order and resulting judgment is appropriate under Rule 59(e) and/or Rule 60(b) because the Court made a clear error and reached a manifestly unjust and surprising result in granting Defendants summary judgment based on a theory of publication that was never previously raised in this litigation without giving TL notice and a reasonable opportunity to respond, as is required by Rule 56(f).

Whatever notice was provided through Defendants' opposition brief was insufficient because the Court found against TL on a publication theory that it came up with *sua sponte*. Publication is a notoriously elusive and unsettled area of copyright law, and there is no controlling case law (if any case law at all) addressing when large-scale immersive art exhibits like the ones at issue here are considered legally published under the technical definition set forth in the Copyright Act. The Court's reasoning, based on a secondary source, is that all of TL's works may be published because TL has displayed its exhibits at art museums pursuant to licensing agreements, the offering of which could be considered a form of publication. But Defendants' opposition brief presented a single and completely different theory of publication—that TL published all of its works by posting pictures or videos of them on the internet. TL did not believe

---

[1] All capitalized but undefined terms herein shall have the meaning set forth in TL's summary judgment briefing. All citations are omitted from and emphasis added to legal authority cited herein unless otherwise indicated.

that offers of licenses to museums was a potentially applicable theory of publication that needed to be refuted and would have easily been able to do so had it received notice and an opportunity to respond to the Court's *sua sponte* publication theory.

Specifically, TL would have presented evidence showing (1) that TL has never offered a license to display *Boundaries* (in other words, displaying it at Pace London was conducted by TL itself); (2) that TL has only ever offered licenses to display *Crystal*, *Forest*, *Particles*, and *Wander* to single museums rather than to groups of museums, and for limited purposes, which would not constitute publication and would therefore leave the exhibits unpublished; and (3) that such offers were made between TL in Japan and museums located in Berne countries, such that even if the offers did somehow qualify as publication, they occurred outside the U.S. (although a reasonable jury could have already inferred this from the record based on where the exhibits were first displayed). TL also would have submitted additional evidence demonstrating that the TL Exhibits do not fully exist until the moment they are installed (although this too was already clear from the record, as explained below). This means that offers of licenses to museums could not have published any of the TL Exhibits, since an offer of a license is only publication if the work "exist[s] when the offer is made." Compendium § 1906.3. TL's large-scale digital art installations are not like simple paintings that can be auctioned up to museums and then handed over; significant negotiation and venue-specific tailoring occurs before any exhibit is completed, and all of this takes place only after TL comes to an agreement with a museum or exhibitor on the terms of the display.

TL files this motion principally to provide the evidence that it would have offered had it been on notice of the forthcoming grounds of the Court's ruling and had a reasonable time to adduce evidence in response. That evidence, described in detail below, at a very minimum creates a material factual issue concerning TL's exemption from the registration requirement. In short, this is not a case where evidence that would have prevented summary judgment ***does not exist***; it is a case where TL was not

reasonably on notice of the theory of publication the Court would advance and did not have an opportunity to provide the relevant evidence. Relief from the Order and judgment is therefore warranted under Rules 59(e) and 60(b)(1) and (6).

## BACKGROUND

At the time the parties moved for summary judgment, "United States work" status and the need for registrations had never been raised by Defendants in the litigation, including in a motion to dismiss or their Answer. *See generally* Dkt. Nos. 21-1 at 1, 7-11; 30 at 11-12; 79 at 15-17; *see also* Dkt. No. 180 ("TL Reply") at 2 n.5. They also did not question TL witnesses about the subject of publication. Because of this, TL did not believe that the registration exemption was or would be contested at the time it initially assembled evidence in support of its own summary judgment motion and argued, consistent with its Second Amended Complaint ("SAC"), that its works were exempt from the statutory definition of United States work because they were either unpublished works created by foreign nationals abroad or were first published abroad by way of museum exhibitions in Berne countries. This proved true—Defendants did not move for summary judgment on the registration issue in their own motion.

Instead, Defendants argued that TL's works are all United States works that needed to be registered for the first time in their opposition to TL's motion for summary judgment. *See* Order at 3 n.1. Defendants specifically advanced the theory that TL's works are really United States works because TL has displayed pictures and videos of them on the internet, which Defendants argued constitutes simultaneous publication in the United States, triggering a need for registration. Dkt. No. 171 ("Defs' Opp'n") at 10-15. Defendants did not argue that TL's works might have been published through the offering of licenses to museums for display or distribution to the public. *See id.* Neither party has ever raised the possibility that TL's works could be considered published through the offering of licenses to museums for public display.

In TL's summary judgment reply brief, it responded directly to Defendants'

internet-based theory of publication and noted that if the TL Exhibits were published, the most closely analogous event was when they were first publicly displayed at museums to the paying public for exhibitions abroad in Berne countries. TL Reply at 1, 5. TL did not address the issue of whether publication could have occurred via licensing or offering to license an exhibit to a museum for public display, as that theory of publication had never previously been raised and after diligent research on the undisputedly complex and murky area of publication (which included the Compendium), TL had not considered this as a plausible theory of publication based on the facts and evidence adduced during discovery.

On July 12, 2022, the Court issued its Order granting Defendants summary judgment on the ground that TL failed to "provide sufficient evidence of whether, when, or where its various works were *first* published even though there is evidence in the record that some or all of Plaintiff's works *are* published." Order at 5. The Court held that under the definition in Section 101, "'offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.'" *Id.* at 4. Citing the Compendium for the proposition, the Court also stated that "offering a copy of a work to a museum for public display or to a paying client 'with a license permitting further distribution or display' constitutes publication." *Id.* (citing Compendium § 1906).

The Court identified the following record evidence as potentially constituting publication under its theory (all of which were undisputed factual statements submitted by TL along with its own opposition brief, filed concurrently with the opposition brief in which Defendants challenged the registration exemption): (1) indication that TL "licenses its exhibits to others for public display"; (2) statement that *Crystal* has been licensed for public display in Japan; (3) statement that *Forest* and *Wander* were licensed for public display in China; (4) indication that TL includes licenses to images of its exhibits when it licenses its exhibits; and (5) testimony by Yasuhito Hirowatari that

"there are instances when the license to use photographs are included in the license to display the artwork." *Id.* at 5 (citing Dkt. No. 172-1 ¶¶ 621, 628, 629, 622 and Dkt. No. 158-13, 54:9-12). The Court later raised the possibility that TL "hypothetically first published *Crystal* by licensing it to a Taiwanese art museum for public display." *Id.* at 5. The Court did not address TL's theory that its works are all unpublished, other than to state that it cannot "assume Plaintiff's works are unpublished without any evidence to that effect—i.e., by declaration or deposition testimony." *Id.*

The Court recognized in a footnote that Defendants did not move for summary judgment on registration grounds and raised the issue only in their opposition brief but held that the latter provided "ample notice that [TL] should come forward with all its evidence of exemption from registration …." *Id.* at 3 n.1.

## ARGUMENT

Reconsideration of a grant of a motion for summary judgment can be made under Federal Rule of Civil Procedure 59(e), by which a party may bring a motion to alter or amend a judgment, seeking "a substantive change of mind by the court." *Tripati v. Henman*, 845 F.2d 205, 206 n.1 (9th Cir. 1988). "Reconsideration is appropriate if the district court '(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272634, at *1 (C.D. Cal. Aug. 26, 2003) (quoting *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993)). "Clear error" is shown when the error is "manifestly unjust," *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001), which means "an error in the trial court that is direct, obvious, and observable," *Brooks v. Tarsadia Hotels*, 2020 WL 601643, at *5 (S.D. Cal. Feb. 7, 2020).

Reconsideration of a grant of summary judgment can additionally be sought under Rule 60(b), which provides for relief from a judgment or order when there has been "mistake, inadvertence, surprise, or excusable neglect" or for "any other reason

that justifies relief." Fed. R. Civ. P. 60(b); *see, e.g.*, *Khan v. Seton*, 2022 WL 2235845, at *2 nn.1-2 (C.D. Cal. Mar. 4, 2022) ("[G]enerally, once judgment has been entered, a district court may reconsider its decision under either Rule 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment) of the Federal Rules of Civil Procedure."). Finally, Local Rule 7-18 "is coextensive with Rule 60(b)." *Khan*, 2022 WL 2235845, at *2 n.1. Under Rule 7-18, reconsideration may be granted if there is "a manifest showing of a failure to consider material facts presented to the Court before such decision." LR 7-18; *Watanabe*, 2003 WL 24272634, at *1.

**I.  RELIEF FROM THE ORDER IS WARRANTED UNDER RULE 59 AND/OR 60 BECAUSE TL DID NOT RECEIVE NOTICE AND A REASONABLE OPPORTUNITY TO RESPOND TO THE COURT'S *SUA SPONTE* PUBLICATION THEORY.**

The Court should grant relief from its Order and the judgment under Rule 59(e) and/or Rule 60(b) because TL did not receive notice and a reasonable opportunity to respond once the Court considered granting Defendants summary judgment on the ground that TL failed to provide sufficient evidence of exemption from the registration requirement pursuant to a theory not raised in any of the parties' papers. The clear error in failing to provide adequate notice resulted in the manifestly unjust and surprising result of this entire case being thrown out after being hotly litigated for years, simply because TL did not provide evidence that exists—and could have easily and quickly been submitted with proper notice—but which TL did not know it needed to or could provide given the unique briefing posture in which the issue of publication was first raised. *See* Fed. R. Civ. P. 59(e), 60(b) ("surprise" as ground for relief).

The Ninth Circuit has cautioned that "the propriety of granting summary judgment in favor of a party who did not so move is often a 'close question'" and only appropriate when there has been "notice and a reasonable time to respond" and "an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law." *KST Data, Inc. v. DXC Tech. Co.*, 980

F.3d 709, 713-14 (9th Cir. 2020). Further, "if a court concludes that a non-moving party is entitled to judgment, '***great care must be exercised*** to assure that the original movant has had an adequate opportunity to show that there is a genuine issue and that his [or her] opponent is not entitled to judgment as a matter of law.'" *Albino v. Baca*, 747 F.3d 1162, 1176-77 (9th Cir. 2014); *see also, e.g.*, *YS Garments v. Cont'l Cas. Co*, 828 F. App'x 354, 356-57 (9th Cir. 2020) (vacating summary judgment grant where losing party "did not have an opportunity to offer a defense to the district court's novel approach"); *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982) ("It is, of course, essential that the appellate court carefully review the record and determine that the moving party against whom summary judgment was rendered had a full and fair opportunity to ventilate the issues involved in the motion."); *Villapando v. Banamex USA Bancorp*, 2020 WL 1942783, at *12 (C.D. Cal. Apr. 21, 2020) ("Such an entry of summary judgment for the non-movant is appropriate 'if the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'"); *MGA Ent. v. Hartford Ins. Grp.*, 2012 WL 12895375, at *1-2 (C.D. Cal. Apr. 30, 2012) ("A sua sponte grant of summary judgment against the non-movant is appropriate where: (1) 'no material dispute of fact exists'; and (2) 'the losing party has had an adequate opportunity to address the issues involved, including adequate time to develop any facts necessary to oppose summary judgment.'") (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1533 (9th Cir. 1995)).[2]

In light of these requirements, it was clear error, unfairly surprising, and manifestly unjust to dismiss this case after three years of intense litigation when the only possible notice of the grounds for dismissal came from an argument in an opposition brief and the only opportunity to respond was a short reply brief. *See Villapando*, 2020 WL 1942783, at *12-13 (denying request for *sua sponte* summary

---

[2] TL believes that under the plain language of Rule 56(f), notice prior to granting summary judgment needed to come from "the court" rather than from an argument in an opposition brief, and will raise that issue on appeal in the event this motion is denied.

judgment on issue raised only in opposition brief because reply brief would not have been an adequate opportunity to respond); *see also* Fed. R. Civ. P. 59(e), 60(b); *Watanabe*, 2003 WL 24272634, at \*1.

### A. Defendants' Opposition Brief Did Not Provide "Ample Notice" Of A Need To Address A Publication Theory That Was Never Previously Raised.

The Court held that Defendants' opposition brief gave TL "ample notice" of a need to come forward with all of its evidence establishing exemption from the registration requirement. Order at 3 n.1. But that is not the case for the reasons explained below. At a minimum, deeming an argument raised for the first time in an opposition brief "ample notice" does not constitute exercising "great care" to ensure that material factual disputes do not foreclose summary judgment before entering it *sua sponte*. *See Albino*, 747 F.3d at 1176-77.

#### 1. Defendants Never Raised The Theory Of Publication The Court Relied On.

Defendants' arguments regarding publication in their opposition brief did not provide notice because the Court relied on a publication theory that "depart[ed] from" the only theory Defendants raised in their brief. *See YS Garments*, 828 F. App'x at 356-57 (reversing and vacating summary judgment where party that prevailed below raised several related theories for dismissal in briefing "that depart[ed] from the district court's analysis" and party that lost below "did not have an opportunity to offer a defense to the district court's novel approach").

Here, Defendants challenged TL's registration exemption in their opposition brief solely on the theory that all of the TL Exhibits and Images were first published simultaneously in the United States by way of posting pictures and videos on the internet. *See* Defs' Opp'n at 10-15. TL directly responded to this theory of publication and United States work status, *see* TL Reply at 1-8, and the Court appears to have largely agreed that Defendants' theory was erroneous, at least as to the TL Exhibits, *see* Order at 5. Defendants did not argue that TL might have published its exhibits by

making offers to license them to museums for display (indeed, the word "license" appears once in Defendants' opposition brief, in an unrelated context). *See* Defs' Opp'n at 15. Because of this, TL addressed Defendants' opposition brief on the terms that were argued therein and did not put forth a declaration or other evidence regarding the licensing-to-museums issue, even though such evidence does exist as set forth below.

Indeed, the first time in the litigation that ***anyone*** raised the issue of potential publication through the offering of licenses to museums to display TL's exhibits was when the Court did so in its Order. The Court did so *sua sponte*, without relying on Defendants' arguments in their opposition brief (which as just noted never addressed that issue). In fact, the statements of undisputed fact that the Court relied on to indicate publication on this theory all came from TL's submission included with its own opposition brief, *see* Order at 5; Dkt. No. 172-1 ¶¶ 621, 628, 629, 622, which was filed the same day as Defendants' opposition brief and could not have been construed as part of Defendants' arguments and request for summary judgment under Rule 56(f). Nor should TL have been required to predict the Court's theory of publication. It is hardly settled law that offering a license to a museum for public display constitutes publication. The Copyright Act does not say this directly, and TL is aware of no caselaw (let alone any controlling opinion) saying this. Instead, the Court's only support for the proposition was a sentence from the Compendium, a secondary source.

Moreover, and respectfully, the Court misinterpreted the Compendium, which explains that publication occurs when a piece of artwork is offered for license to a "group of museums," not a single museum. Compendium § 1906.1; *see* Order at 4.[3] And in a section of the Compendium that the Court did not address, it states that offering to distribute copies of a work only constitutes publication "provided that the copies or phonorecords ***exist when the offer is made***." Compendium § 1906.3. For example,

---

[3] The Court's reference to "offering a work to a museum for public display or to a paying client" quoted a section of the Compendium specifically dealing with "copies of a photograph" being "offered to clients." *See* Order at 4; Compendium at § 1906.1.

1   "[o]ffering to distribute a motion picture that is currently in production does not

2   constitute publication," and "[o]ffering to distribute a sound recording that has not been

3   fixed in its final form does not constitute publication." *Id.* Thus, even if statements in

4   the non-binding Compendium could have provided adequate notice (which TL

5   disputes), they did not provide notice here that the Court's particular theory of

6   publication applied because, as set forth below (1) TL has not offered its exhibits or

7   images to "groups of museums," (2) grants to individual exhibitors were limited, and

8   (3) the TL Exhibits and Images did not exist at the time TL offered single museums

9   limited licenses. TL therefore could not have predicted that the Court would rely on its

10  theory of publication and could not have anticipated the need to provide evidence

11  addressing it with its reply brief.[4]

12      In sum, after Defendants challenged the registration exemption in their

13  opposition brief (under a specific theory, which TL responded to), the Court *sua sponte*

14  identified a different theory of publication based on a secondary source that is at least

15  arguably inapplicable yet did not give TL an opportunity to provide evidence that would

16  have addressed it. Because controlling authority requires notice and an opportunity to

17  respond before summary judgment can be entered *sua sponte* in these circumstances, it

18  was clear error and manifestly unjust to do so. *See YS Garments*, 828 F. App'x at 356-

19  57 (vacating due to lack of notice where briefing arguments "depart[ed] from the district

20
21  [4] This is all the more true because publication is a notoriously unsettled area of the law.
    "Although the meaning of 'published' may seem simple, the term implicates numerous
22  unsettled legal questions. Indeed, the substantial confusion regarding publication status
    has led the Copyright Office to open a Notice of Inquiry (still pending) on the subject."
23  Brief of the Copyright Alliance as Amicus Curiae in Support of Petitioner, *Unicolors,
    Inc. v. H&M Hennes & Mauritz, L.P.*, 2021 WL 3598247 (U.S.), 13-15 (citing U.S.
24  Copyright Office, Notification of Inquiry, 84 Fed. Reg. 66,328 (Dec. 4, 2019)
    ("Commenters to the Office have indicated that the distinction between published and
25  unpublished works is 'so complex and divergent from an intuitive and colloquial
    understanding of the terms that it serves as a barrier to registration, especially with
26  respect to works that are disseminated online.'")). According to the Copyright Alliance,
    "[y]ou could ask ten seasoned copyright attorneys whether a particular work is
27  published or not and get back ten very different answers. Yes, that's how convoluted
    the legal definition of publication is." *Supreme Court (Finally) Renders a Copyright
28  Decision That's not for the Birds*, Keith Kupfershmid, Copyright Alliance (Mar. 3,
    2022), https://copyrightalliance.org/supreme-court-decision-unicolors-hm/.

court's analysis" and court relied on different "novel" theory).

## 2. Defendants' Authority And Arguments Did Not Provide "Ample Notice" Of A Need To Describe The Particulars Of First Publication Or Refute All Possible Publication Theories.

While it is true that Defendants argued in their opposition brief that TL had not provided evidence of the circumstances of first publication or lack of publication, *see* Defs' Opp'n at 12, this did not provide TL with "ample notice" of a need to come forward in its reply with all possible evidence on those issues, for several reasons.

*First*, the notion that a party opposing summary judgment must supply evidence to affirmatively prove an element of its claims in response to a "lack of evidence" argument contradicts Rule 56 and clear Ninth Circuit precedent. The Ninth Circuit has held that a party opposing summary judgment "has no obligation to produce anything until the moving party defendant has carried its initial burden of production," which means "produc[ing] affirmative evidence negating an essential element of the nonmoving party's claim or defense." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105, 1107 (9th Cir. 2000).

Here, Defendants—who are effectively the movants on registration grounds, albeit through their opposition brief—never produced affirmative evidence negating TL's claim that its works are exempt from the registration requirement because they were either first published abroad or are unpublished.[5] To do so, Defendants would have needed to adduce such evidence in discovery, which they never did (including asking TL witnesses about publication). *See Nissan*, 210 F.3d at 1105 ("In a typical case, in

---

[5] It was permissible for TL to advance these theories of exemption from the registration requirement in the alternative. *See, e.g.*, *MB Fin. Grp., Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008) ("[A] plaintiff is generally entitled to plead alternative or multiple theories of recovery"); *Donald v. Harrington*, 243 F.3d 547 (9th Cir. 2000) (["Plaintiff's] contentions that defendants may not argue alternative grounds for summary judgment…lack[s] merit."); *Biocell Tech. LLC v. Arthro-7*, 2013 WL 12063914, at *4 (C.D. Cal. May 22, 2013) ("In the abstract, there is nothing improper about pleading in the alternative or to present in opposition to summary judgment two alternative, somewhat opposing theories of liability that may draw on different and/or related facts."). Indeed, nothing in the Copyright Act nor any Supreme Court or Ninth Circuit case (or any authority TL is aware of) states that a plaintiff claiming to be exempt from registration must plead or stick to a single exemption theory.

order to carry its initial burden of production by pointing to the absence of evidence to support the nonmoving party's claim or defense, the moving party will have made reasonable efforts, using the normal tools of discovery, to discover whether the nonmoving party has enough evidence to carry its burden of persuasion at trial."). The closest Defendants came in their opposition brief to satisfying their burden of production to negate TL's claim of exemption was citing evidence to support their theory of simultaneous U.S. publication over the internet, which TL fully refuted. Although Defendants argued rhetorically that TL had not provided evidence of specifically when its works were first published, that did not require an evidentiary proffer in response because "[a] moving party may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan*, 210 F.3d at 1105. And even if Defendants had provided evidence satisfying their burden of production as to a "lack of evidence" as movant, the proper course in that case would have been to give TL an opportunity to adduce evidence in response. *See id.* (party opposing summary judgment "must have had sufficient time and opportunity for discovery before a moving party will be permitted to carry its initial burden of production by showing that the nonmoving party has insufficient evidence") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)).

In short, Defendants' assertion in their opposition that TL did not prove the circumstances of first publication or lack of publication was the precise sort of argument that the Ninth Circuit has said does ***not*** trigger an obligation by the non-movant to provide all its evidence. *See id.* at 1107 (reversing grant of summary judgment because "the district court confused plaintiffs' obligation at trial and plaintiffs' obligation as a nonmoving party at summary judgment. At trial, a plaintiff must produce evidence in support of its claim in order to carry its ultimate burden of persuasion. But at summary judgment, a nonmoving party plaintiff has no obligation to produce anything until the moving party defendant has carried its initial burden of production."); *Henry v. Gill*

*Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) ("Under Federal Rule of Civil Procedure 56, a moving party is entitled to summary judgment only upon a showing that there are no genuine issues of material fact requiring a trial. The party opposing the motion is under ***no obligation to offer affidavits or any other materials*** in support of its opposition. Summary judgment may be resisted and ***must be denied*** on no other grounds than that the movant has failed to meet its burden of demonstrating the absence of triable issues."); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 115 (2d Cir. 2017) ("The mere assertion by a defendant moving for summary judgment that the plaintiff 'has not produced any evidence' to support an essential element of the plaintiff's claim does not satisfy the burden that Rule 56(a) imposes…. A plaintiff is under no obligation to 'produce' its evidence prior to trial, unless such an obligation arose in response to a discovery demand (or a court order) requiring the plaintiff to set forth the evidence supporting its claim.").

***Second***, TL also was not put on notice by Defendants' opposition brief because Defendants cited no controlling authority holding that a plaintiff relying on exemption from the registration requirement must come forward with evidence establishing the circumstances of first publication or unpublished status at summary judgment. Nor could they have, since the Copyright Act is silent as to the showing needed to establish that a work is not a United States work as a general matter or publication status as a more specific matter, and no Supreme Court or Ninth Circuit decision addresses the issue. Instead, Defendants (and the Court) cited only distinguishable, non-binding authority, including the Eleventh Circuit's decision in *Kernel Records*. Non-binding authority does not put a party on notice of a need to take action, least of all make a highly specific evidentiary proffer regarding an unsettled legal issue in a reply brief. *See, e.g.*, *In re Roger*, 2018 WL 1779336, at *6 (C.D. Cal. Apr. 12, 2018) (reversing where bankruptcy court dismissed case relying on an Eleventh Circuit decision and faulted plaintiff for not addressing it, explaining that a plaintiff "has no obligation to

address non-binding authority, regardless of how persuasive it may be"); *Moriarty v. Am. Gen. Life Ins. Co.*, 2018 WL 4331999, at *3 (S.D. Cal. Sept. 11, 2018) ("Plaintiff's identification of two non-binding cases that have addressed the legal question at issue do not establish that the legal question has been definitively settled.").

Moreover, none of the authority that supposedly put TL on notice (other than arguably the distinguishable *Kernel Records* decision, discussed below) stands for the proposition that a plaintiff relying on the registration exemption must establish the when, where, and how of first publication at summary judgment, or provide evidence such as a declaration proving the negative of a lack of publication, which is generally not necessary or proper in litigation. *See, e.g.*, *Elkins v. U.S.*, 364 U.S. 206, 218 (1960) ("[A]s a practical matter it is never easy to prove a negative."); *Arizona Cattle Growers' Ass'n v. U.S. Fish & Wildlife, Bureau of Land Mgmt.*, 273 F.3d 1229, 1244 (9th Cir. 2001) ("It would be improper to force [plaintiff] … to prove a negative."); *Atari Interactive, Inc. v. Hyperkin Inc.*, 2020 WL 4287584, at *11 (C.D. Cal. 2020) (noting the "difficulties inherent in requiring a party to prove a negative"). The only other cases Defendants cited were highly distinguishable district court cases.[6]

Similarly, the additional authority the Court cited does not support the evidentiary requirement it imposed. For example, the Court cited a section of the Nimmer treatise for the proposition that a plaintiff has a burden at summary judgment to establish the circumstances of first publication. Order at 3. But in addition to being a non-binding secondary source, that section of Nimmer merely states that "[t]he burden to show [registration] exemption remains on the party claiming it." Nimmer §7.16(B)(6)(d). The

---

[6]The only summary judgment decision besides *Kernel Records* that Defendants cited is from the Southern District of Florida and relied on *Kernel Records. See Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1350-51 (S.D. Fla. 2017) (cited in Defs' Opp'n at 11) *Casa Dimitri* is also distinguishable because the defendants there raised publication status in their opening brief rather than an opposition, yet the plaintiff still failed to provide any details about publication. Defendants' remaining authority (which likewise is non-binding) either addressed the pleading standard or motions in limine, *See DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555-56, 566 (S.D.N.Y. 2018); *Matrix Int'l Textile, Inc. v. Monopoly Textile, Inc.*, 2017 WL 2929376, at *3 (C.D. Cal. May 12, 2017).

relevant section nowhere indicates that the burden of proof for this exceeds a preponderance standard, includes a particularized showing, or extends beyond a showing that the works at issue are foreign works protected by the Berne Convention (which TL did) to encompass an affirmative obligation to prove a negative. *See id.* Additionally, the two district court decisions the Court cited were at the motion to dismiss stage and merely held that a plaintiff needs to plead exemption from the registration requirement in its complaint (which TL did here); they say nothing about the evidentiary showing required at summary judgment. *See Swift Harvest USA, LLC v. Boley Int'l HK Ltd*, 2020 WL 7380148, at *10 (C.D. Cal. Sept. 22, 2020); *UAB "Planner 5D" v. Facebook, Inc.*, 2019 WL 6219223, at *6 (N.D. Cal. Nov. 21, 2019).

Although the Eleventh Circuit's *Kernel Records* decision affirmed summary judgment on the alternative ground that there was no evidence in the record establishing the plaintiff's claim of first publication abroad, *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309-11 (11th Cir. 2012), that did not put TL on reasonable notice that it needed to make the showing required by the Court here because that decision is non-binding, distinguishable, and arguably wrongly decided. Unlike here, the parties in *Kernel Records* did not dispute that the sound recording at issue **was** published—the only dispute involved when, where, and how it was published. *See id.* at 1296, 1298-99. The *Kernel Records* decision accordingly does not address what is needed to show that a plaintiff's work is unpublished, which is TL's primary theory of exemption here. For this reason alone, Defendants' reliance on that decision did not put TL on notice that it needed to provide negative evidence of a **lack** of publication.[7] Moreover, the court in *Kernel Records* searched the record and could not find evidence supporting the plaintiff's actual theory of first publication abroad, *see id.* at 1311; it did not come up

---

[7] In its reply brief, TL stated that it has never offered copies of its work to the public for sale, lease, or other transfer of ownership over the internet, responding to the specific publication theory Defendants raised. TL Reply at 4, 6. TL believed that it was unnecessary to support the notion that its works are unpublished with a declaration statement because this would have been aimed at proving a negative and could have constituted an improper legal opinion by a fact witness.

---

with a new theory of publication that the parties had never addressed in briefing and require the plaintiff to have predicted and refuted it.[8]

Further, unlike here, the defendants in *Kernel Records* pled lack of registration as an affirmative defense, asked questions specifically about the issue at depositions, and affirmatively moved for summary judgment on the issue of lack of a registration exemption. *See* 694 F.3d at 1297, 1306-07. The plaintiff-appellant in that case thus had a very different opportunity to adduce evidence and respond on the issue of registration exemption than TL received here. Finally, *Kernel Records* cannot be squared with the principle described above that it is not a plaintiff's burden to prove anything in opposing a motion for summary judgment (or here, a request for summary judgment made for the first time in an opposition brief) unless the defendant first carries its burden of production. *See, e.g.*, *Nissan*, 210 F.3d at 1102-03, 1105-07.

To be clear, TL will attempt to establish that *Kernel Records* is distinguishable and wrongly decided on appeal, if necessary, but the point for present purposes is simply that *Kernel Records* and Defendants' other authority did not put TL on notice of a need to provide additional evidence with its reply brief.

## B.   A Reply Brief Was Not A Reasonable Opportunity To Respond.

Even if TL arguably was on notice of a need to provide evidence demonstrating the particulars of first publication or lack thereof (which it was not), a 10-page reply brief was not a sufficient opportunity to respond. When a court is considering granting summary judgment *sua sponte* under Rule 56(f), it must provide the losing party with a "a 'full and fair opportunity to ventilate the issues involved in the matter.'" *E.g.*, *YS Garments*, 828 F. App'x at 357; *Villapando*, 2020 WL 1942783, at *12 (similar); *accord, e.g.*, *Walsh v. Tehachapi Unified Sch. Dist.*, 997 F. Supp. 2d 1071, 1076–77

---

[8]   To the contrary, the court explained that "[i]f a reasonable fact-finder, ***under any theory***, could find by a preponderance of evidence" that the plaintiff's work was published and when and where, summary judgment would have been inappropriate. 694 F.3d at 1311. Under this logic, summary judgment was inappropriate here because a reasonable jury could have found that TL's works are unpublished under multiple theories, as described herein.

(E.D. Cal. 2014) (ordering additional briefing and evidence from plaintiff to show why summary judgment should not be entered *sua sponte* against it); *Foremost in Packaging Sys. v. Cold Chain Techs.*, 2006 WL 8434861, at *5 (C.D. Cal. Apr. 6, 2006) (allowing plaintiff to submit additional evidence before issuing *sua sponte* summary judgment). It was clear error to hold that such an opportunity was provided here.

**First**, a reply brief necessarily could not have been a reasonable opportunity to respond because parties are generally not permitted to introduce new theories or provide new evidence in reply briefs. *See, e.g.*, *Villapando*, 2020 WL 1942783, at *13 (denying party's request to grant summary judgment *sua sponte* on issue raised in opposition brief where opponent's "only opportunity to address [the issue] was through the MSJ Reply," which "was not an appropriate means to present evidence for the first time"); *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894-95 (1990)); *U.S. v. Martinez-Leon*, 565 F. Supp. 2d 1131, 1131 n.1 (C.D. Cal. 2008) (refusing to consider declaration attached to reply brief and collecting cases holding that new evidence may not be submitted with a reply); *Roth v. BASF Corp.*, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008) ("It is not acceptable legal practice to present new evidence or new argument in a reply brief[.]").

In fact, this District's Local Rules only allow for proposed statements of undisputed fact to be submitted with opening and opposition summary judgment briefs, C.D. Cal. L.R. 56-1, 56-2, and this Court's individual rules expressly direct parties "to comply precisely with Local Rule 56-1 through 56-4," Hon. J. Gutierrez Standing Order Regarding Newly Assigned Ccases (Dkt. No. 167) at 7. While TL might have attempted to provide a declaration discussing publication with its reply and argued that the Court should have considered it because Defendants opened the door, that possibility hardly equates with an affirmative obligation to provide such a declaration lest the entire

litigation be dismissed. To the extent TL misjudged the extent of the proffer it would have been allowed to make with its reply brief, the drastic result of dismissing this entire case stemmed from "mistake, inadvertence, surprise, or excusable neglect" warranting relief from the Order and judgment under Rule 60(b)(1).

**Second**, the arguments Defendants made in their opposition brief by their terms addressed the showing TL **had made** up to that point (i.e., the evidence submitted with TL's own motion for summary judgment). *See* Defs' Opp'n at 12 ("The evidence **cited by** TL does not establish where or how the TL Exhibits were *first* published[.]"). Again, TL responded to those arguments on the terms on which they were made and did not believe it was necessary or permissible to provide further evidence along with its reply.

**Finally**, Defendants' decision to challenge the issue of publication for the first time in an opposition brief resulted in the perverse consequence of TL receiving **less** of an opportunity to respond than if Defendants had moved on the issue affirmatively (in which case TL would have been able to respond in a 25-page opposition brief and been permitted to propose additional statements of undisputed fact under the Local Rules). It was clear error and manifestly unjust to hold that a much shorter reply brief with no opportunity to submit additional factual statements was a reasonable opportunity to respond here, particularly since simple notice and a short time to respond to the Court's concerns would have sufficed to allow TL to cure any perceived evidentiary shortcomings, as contemplated by Rule 56(f).

## C. <u>The Evidence TL Would Have Submitted Had It Received Notice And A Reasonable Opportunity To Respond Would Have At A Minimum Created A Material Factual Dispute Foreclosing Summary Judgment.</u>

Had TL been provided with notice that the Court was considering summary judgment against it on the basis that it had failed to provide evidence of its license offers in connection with the display of exhibits at museums—and while TL believes a reasonable jury could have already inferred the circumstances of its first license offers from the record based on where the exhibits were first displayed—it would have

1  submitted the attached declaration of Yasuhito Hirowatari, who has knowledge of these

2  issues due to his role as head of TL's Management Information Administration Office.[9]

3  Specifically, Mr. Hirowatari explains under oath in his declaration that: TL does

4  not offer licenses to multiple parties at once, including groups of museums or exhibitors

5  (Hirowatari Decl. ¶¶ 4, 5); TL's practice is to negotiate directly with individual

6  museums and exhibitors to arrange to display its exhibits (*id.* ¶ 6); TL does not permit

7  licensees or exhibitors to further distribute, sell, or display the works beyond public

8  display at the specific museum's space (and to TL's knowledge, no exhibitor has tried

9  to do so) (*id.* ¶ 7); *Boundaries* was only ever displayed at Pace Gallery in London and

10  the exhibition was not done so pursuant to a license, and TL essentially put on the

11  exhibition itself (*id.* ¶¶ 8-10); negotiations for the display or license of the TL Exhibits

12  commenced between six months and 18 months prior to the exhibitions (*id.* ¶¶ 13, 14,

13  19); the first licensed displays of *Crystal*, *Wander*, *Particles*, and *Forest* were entered

14  into via agreements between TL in Japan and individual exhibitors in Japan and France

15  (*id.* ¶ 11); *Wander*, *Particles*, and *Forest* were never displayed in the United States or

16  offered to any groups for licensing, but rather were only offered to single exhibitors

17  each time (*id.* ¶ 12); while *Crystal* was, at one point, displayed in a museum in

18  California pursuant to a license agreement, it was never offered to a group of museums

19  at once, and it was licensed for display in a museum in Japan as its first exhibition (*id.*

20  ¶¶ 15, 18); none of the TL Exhibits existed yet at the time they were first offered for

21  license or display and were only created or completed after offers were made and

22  agreements (if any) were entered into (*id.* ¶¶ 4, 13-15, 19, 22); images of TL's works

23  are created after the exhibits are created and thus also do not exist at the time any license

24

25  _____

[9] Evidence describing this issue does not appear in depositions because Defendants did

26  not question TL witnesses about it. TL was not under an obligation to question its own witnesses about elements of its claims at depositions. *See Franklin v. Dudley*, 2011 WL 2493770, at *7 (E.D. Cal. June 22, 2011); *Ritchie v. Nat'l Football League*, 2015 WL

27  1809203, at *2 (C.D. Cal. 2015) (finding it permissible for plaintiff to give trial testimony on issue not raised at deposition because defendants never questioned her about it; plaintiff "was

28  available to [explain issue to] Defendants had they simply asked the question").

agreements were entered (*id.* ¶ 23); the TL Images—which depict *Forest*, *Wander*, *Particles*, and TL's additional work *Light Vortex II*, were taken after the works were completed and installed (*id.* ¶ 24); to the extent the TL Images were licensed as part of a bundle of rights in an exhibition agreement, the rights were specific to the exhibitor in question and limited to public display in connection with the display of the pictured exhibits and advertising thereof (*id.* ¶ 21); and the TL Images have never been individually licensed, sold, leased, loaned, or otherwise transferred to any third party or offered to a group of museums or third parties for licensing or transfer (*id.* ¶ 20).

Based on these sworn statements and evidence already in the record, a reasonable jury could conclude that the TL Exhibits and Images are unpublished. While TL should not have to refute any publication theory to establish registration exemption at this stage, Mr. Hirowatari's declaration establishes that the TL Exhibits and Images were not published through license offers because they were never offered to a "group of museums," grants to individual exhibitors were limited, and they did not exist at the time of license offers. *See* Compendium §§ 1906.1, 1906.3; Hirowatari Decl. ¶¶ 4-24. A reasonable jury could also have concluded that the TL Exhibits were first offered to exhibitors in Berne countries (and therefore were first published there under the Court's publication theory). Finally, a reasonable jury could conclude that TL has engaged only in a limited publication of the TL Exhibits and Images insofar as they were only ever offered to limited parties and for limited purposes. *See White v. Kimmell*, 193 F.2d 744, 746-47 (9th Cir. 1952) (a communication that offers the contents of a work "to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale, is considered a 'limited publication'"). But "[a] limited publication is not considered a distribution to the public and, therefore, is not publication." Compendium § 1905.1.

TL respectfully requests that the Court consider Mr. Hirowatari's additional statements now in the interest of ensuring that TL has a full opportunity to show that

there are, at very least, material factual issues that preclude summary judgment on the issue of registration exemption, and respectfully notes that doing so now may best serve the interests of judicial economy. *See Sawyer v. U.S.*, 831 F.2d 755, 759 (7th Cir. 1987) ("*sua sponte* dismissals … may ultimately waste, rather than economize, judicial resources, by producing appeals and remands that might have been avoided.").

## II. A REASONABLE JURY COULD HAVE FOUND BASED ON THE SUMMARY JUDGMENT RECORD THAT TEAMLAB'S EXHIBITS AND IMAGES ARE NOT UNITED STATES WORKS.

The Court should additionally reconsider and vacate its Order because there was a manifest failure to consider evidence from which a reasonable jury could have concluded, based on the existing summary judgment record, that TL's works are unpublished and thus not United States works under the Copyright Act. *See* L.R. 7-18.

As discussed above, TL advanced two alternate theories at summary judgment as to why its works are not United States works under the Copyright Act: (1) its works are unpublished and the works were all created in Japan by Japanese creators, MSJ at 11-12; MSJ Reply at 2-3; and (2) if the works were published, any publication occurred abroad in Berne countries and not simultaneously in the U.S., also making them not United States works, MSJ at 11-12; MSJ Reply at 5. *See, e.g.*, *Harrington*, 243 F.3d 547. Under the summary judgment standard, viewing the record in the light most favorable to TL, there was, at a minimum, enough evidence for a jury to find in TL's favor on the former theory, i.e., that TL's works are unpublished.[10]

### A. TL Exhibits.

The Court should reconsider its Order because there was evidence in the record from which a reasonable jury could have concluded that the TL Exhibits are

---

[10] While TL does not move here on the basis that, per the summary judgment record, there was also a fact question concerning whether TL's works were first published abroad (including under the Court's theory of publication), TL believes there was such evidence in the record and intends to raise this point on appeal if necessary. TL also believes there was sufficient evidence on the record to find that TL, at most, engaged in limited publication of the TL Exhibits and Images, and similarly will pursue this theory on appeal if necessary.

1  unpublished in that they did not exist at the time any offers of licenses were made. *See*

2  Compendium § 1906.3 (offering to distribute copies of a work only constitutes

3  publication "provided that the copies or phonorecords ***exist when the offer is made***").[11]

4  This proof includes the license agreements that TL provided with its summary judgment

5  submissions as Exhibits X and Y to the April 4, 2022 Declaration of Mr. Hirowatari,

6  Dkt. No. 173, who explained that these illustrative license agreements are

7  "representative" of the licenses TL provides to the museums that display its works. *Id.*

8  at ¶ 6. These license agreements are crucial because they underscore that TL's physical

9  exhibits do not exist at the time of the licenses (and by extension, the time any offers to

10  license the exhibits would have been made).

11      Specifically, Exhibit X states that TL will engage in "Production of Tokushima

12  LED Digital Art Contents," Dkt. No. 173-1 at 8, including "Production of Crystal

13  Universe … [as] described in the attached 'Outline and Drawing of the Work' and its

14  installation in the exhibit venue." *Id.* at 11. Similarly, Exhibit Y states that TL would,

15  among other things, submit "explanatory materials, various layout drawings, list of

16  equipment, systems and software"; would outline the themes and works to be submitted

17  and confirm if the "Deliverables" would be suitable for the venue's design and settings

18  requirements; create "basic reference layouts (drawings)" according to the shape and

19  overall arrangement of the venue; prepare equipment lists; and "create the Deliverables

20  and submit them to" the venue for the venue's approval. Dkt. No. 173-2 at 15-16. Based

21  on this contractual language indicating the contemplated exhibits did not exist yet,

22  coupled with Mr. Hirowatari's sworn testimony that these contracts are typical of TL's

23  licensing deals, and the abundant record evidence indicating that TL's highly complex

24  large-scale works are only truly completed upon installation, a reasonable jury could

25  have concluded that the TL Exhibits did not exist when they were licensed or offered

26

27  [11] For the reasons discussed in Section I, *supra*, TL did not raise these specific legal
theories in this section in the summary judgment briefing because it was not on
28  reasonable notice that such arguments were necessary.

for license to exhibitors for the first time, and were thus unpublished works created in a Berne country that did not need to be registered.

### B. __TL Images.__

With respect to the TL Images, the Court indicated generally that there was evidence that certain images may have been published because permission to display pictures of TL's exhibits was bundled with the licenses to display the underlying exhibits. Order at 5. But the Court manifestly overlooked evidence from which a jury could have concluded that the TL Images are nevertheless unpublished.

*First*, as explained above, since there was evidence from which a jury could have found that the TL Exhibits were not in existence at the time of the applicable license agreements with exhibitors, by extension a jury also could have concluded that the TL Images were unpublished in that they could not have existed yet at the time of any license agreement if the exhibits they depict did not exist. *See* Dkt. No. 157 ¶¶ 3-47 (identifying TL Images as depicting the TL works *Forest*, *Light Vortex II*, *Particles,* and *Wander*).

*Second*, the evidence in the record also indicated more generally that TL did not sell or license the TL Images separately or independently (including over the internet, the only theory of publication Defendants raised), it does not share ownership of the TL Images with any third party, and it does not allow third parties to use the Images commercially without permission, but rather combines limited rights to use images with exhibition license agreements. *See* Dkt. No. 154-1 ¶¶ 115, 287; Dkt. No. 172-1 ¶ 622. Viewed in the light most favorable to TL, these facts from the summary judgment record, taken together, were more than sufficient for a reasonable jury to find that the TL Images were unpublished.

\*\*\*

In sum, the Court overlooked evidence from which a reasonable jury could have found that the TL Exhibits and TL Images are unpublished such that summary judgment was not appropriate. Reconsideration under Local Rule 17-18 is appropriate due to a

manifest failure to consider the evidence TL provided on those issues.

## **CONCLUSION**

For the reasons set forth above, the Court should reconsider and vacate its Order granting Defendants summary judgment or relieve TL from that Order and the judgment under Rules 59(e) and/or 60(b) and Local Rule 17-18.

Dated:  July 26, 2022

**COWAN DEBAETS ABRAHAMS & SHEPPARD, LLP**

By:  /s/ Scott J. Sholder
Nancy E. Wolff, Esq., No. 133334
Scott J. Sholder, Esq., *pro hac vice*
Benjamin S. Halperin, Esq., *pro hac vice*
CeCe M. Cole, Esq. *pro hac vice*
Elizabeth Safran, Esq., *pro hac vice*

*Attorneys for Plaintiff* teamLab Inc.